UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,

Plaintiff,

v. Civil Action No. 01-400 T

IDC PROPERTIES, INC.,

Defendant.

MOTION OF DEFENDANT IDC PROPERTIES, INC.
FOR LEAVE TO SERVE THIRD PARTY COMPLAINT

The Defendant IDC Properties, Inc. ("IDC") moves the Court in accordance with Fed. R. Civ. P. R. 14 for leave to file and serve a Third Party Complaint in this action. In support of its motion, IDC submits herewith a Memorandum of Law and states the following:

1. This action was commenced on August 24,2001 as a complaint for declaratory judgment by the Plaintiff title insurer against IDC. The Complaint was based upon a title insurance policy effective February 11, 1999, providing IDC with $12 million in title insurance (the "Policy") for property it owned on Goat Island in Newport, Rhode Island (the "Property").

2. The Plaintiff alleges in its Complaint that IDC failed to provide it with allegedly adverse information about title to the Property. The Plaintiff seeks to avoid making payment under the Policy, by arguing that failure to disclose the allegedly adverse information implicates an exclusion within the Policy or, alternatively, that the alleged failure to disclose amounted to a fraudulent misrepresentation which entitles the Plaintiff insurer to avoid its $12 million obligation under the Policy.

3. The information adduced through discovery prior to the stay of these proceedings, reveals that the person with the sole responsibility for procuring the title insurance on behalf of IDC was its counsel, Timothy More of Edwards & Angell LLP.

4. Although Edwards & Angell is not presently liable to IDC as IDC has not yet lost the value of the Policy, it may become liable should the Court find that the Plaintiff is excused from payment by virtue of the wrongful or negligent conduct of Mr. More and Edwards & Angell.

5. The adjudication of the Third Party Complaint will prevent the duplication of litigation and avoid the possibility of inconsistent results. The joinder of the claims asserted in the Third Party Complaint will promote the most pragmatic and complete resolution of all matters implicated by the underlying claims, the information adduced through discovery to date and the subsequent rulings of the Rhode Island Supreme Court.

6. IDC has attached hereto as Exhibit A its Third Party Complaint.

7. Request for Oral Argument. IDC requests the opportunity to present oral argument on this motion, as it believes such argument would aid and assist the Court in the adjudication of this motion.

Wherefore, IDC Properties, Inc. prays that the Court enter an order granting it leave to file and serve a Third Party Complaint in substantially the form attached hereto as Exhibit A and that the Court grant such other and further relief as is just.

IDC PROPERTIES, INC., Defendant

By its attorneys,

_______________________

W. Mark Russo (#3937)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

Of Counsel:

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
**Gordon Haley LLP**
101 Federal Street
Boston, MA 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: 10/31/05

## Certification

I hereby certify that on this **31st** day of October, *2005*, I served a true and accurate copy of the foregoing upon the following via first-class, postage prepaid mail.

Steven E. Snow, Esq.
**Partridge Snow & Hahn**
**180** South Main Street
Providence, RI 02903-7120

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COMMONWEALTH LAND TITLE INSURANCE COMPANY, ) )

Plaintiff,

v. Civil Action No. 01-400 T

IDC PROPERTIES, INC., ) )

Defendant. ) )

MEMORANDUM OF LAW OF DEFENDANT IDC PROPERTIES, INC. IN SUPPORT OF 1) MOTION FOR LEAVE TO CONDUCT CERTAIN ADDITIONAL DISCOVERY; 2) MOTION FOR LEAVE TO SERVE THIRD PARTY COMPLAINT; AND 3) MOTION FOR LEAVE TO SERVE AMENDED ANSWER AND COUNTERCLAIM

## Introduction

The Defendant IDC Properties, Inc. ("IDC") submits this memorandum of law in support of its Motion for Leave to Conduct Certain Discovery, its Motion for Leave to File Third Party Complaint and its Motion for Leave to Serve Amended Answer and Counterclaim. This case was commenced as a declaratory judgment action by the Plaintiff title insurer seeking to be excused from the obligation to make payment under a $12 million title insurance policy issued for the benefit of IDC. Since the commencement of this action and during a stay of this proceeding, the Rhode Island Supreme Court has issued two decisions dramatically altering the legal status of the title insured by the Plaintiff. IDC, through its three motions, seeks leave to join in this action a third party, the lawyers who procured the title insurance, to avoid the potential for inconsistent results and unnecessary future litigation; to amend its answer and

counterclaim to conform to the present legal status of title as now established by the Rhode Island Supreme Court, to add claims which have arisen since the commencement of this case; and to conduct additional discovery necessitated by the subsequent Rhode Island Supreme Court decisions and the amended pleadings.

Facts

Tom Roos, along with other members of his family, and unrelated parties, was a shareholder and director of a Rhode Island company, Globe Manufacturing Co.("Globe"), which, amongst other things, owned the land on Goat Island in Newport, Rhode Island. In 1988, there were three existing residential buildings on Goat Island known as America Condominium (46 units), Capella South Condominium (89 units) and Harbor House Condominium (19 townhomes). The island also contained a marina and a hotel. On January 13, 1988, Globe recorded a declaration establishing Goat Island South – a Waterfront Condominium (the "GIS condominium"). The declaration described six defined parcels, the three existing residential buildings and three separately defined parcels, which came to be known as the West Unit, the South Unit and the Reserved Area (later known as the "North Unit"). At the time the declaration was filed, Globe owned a majority of the units in the three residential buildings. The condominium consisted of approximately 23 acres on the Island. The units known as West, South and North consisted of vacant undeveloped land on the island, previously owned outright by Globe. The first amended declaration of the GIS condominium established the South Unit and West Unit as what were referred to as Master Units and defined those Units by metes and bounds in the declaration. The declaration also reserved what were known as development rights in the South Unit and West Unit and the right to convert the area known as the Reserved Area into a so-called Master Unit. The first amended declaration of the GIS condominium was filed

on March 3, 1988. The first amendment, among other things, established December 31, 1994 as the date by which the declarant, Globe, could exercise certain development rights in the Master Units, and by which it could elect to convert the Reserved Area into a Master Unit or withdraw that area altogether from the GIS condominium.

In October, 1994, Tom Roos entered into a series of agreements to purchase the interests of Globe on Goat Island. Those interests included Globe's rights in the GIS condominium (the "Property"). Roos formed IDC, Inc. and IDC Properties, Inc. to carry out these transactions. At the time of the purchase, Roos made arrangements to simultaneously sell the hotel on the island. Accordingly, the substance of the transaction was Roos' purchase of the marina and the 23 acres which comprised the GIS condominium. Roos was represented in the transaction by Timothy More ("More") and his law firm, Edwards & Angell LLP ("Edwards & Angell"). At the time IDC acquired the property, More and Edwards & Angell procured title insurance on behalf of IDC from Chicago Title Insurance Company ("Chicago"). The policy issued by Chicago (the "Chicago Policy") insured IDC's fee simple interest in the two existing master units, the South Unit and the West Unit and the "special declarant's rights in and to GOAT ISLAND SOUTH – A WATERFRONT CONDOMINIUM." The Chicago Policy also insured IDC's interest in a number of individual units in the three residential buildings. The Chicago Policy was issued as of October 21, 1994 in the face amount of $10 million.

Prior to the time of IDC's acquisition of the Property, Globe as the master declarant had purported to extend its development rights through a Third Amendment to the GIS condominium declaration. Subsequent to IDC's purchase, IDC at the direction of More and Edwards & Angell created and filed the Fourth and Fifth amendments to the GIS condominium declaration, all on or before December 31, 1994. The Third, Fourth and Fifth amendments to the GIS condominium

declaration all revolved around the extension of the original December 31, 1994 deadline for development rights. The Third, Fourth and Fifth amendments were all submitted to a vote of the master condominium association of the GIS condominium. That master association consisted of representatives from the 6 Master Units. Each of the three residential buildings was represented on the Master Association by one representative. Globe, and later IDC, effectively controlled the votes of the master association through its ownership of a majority of the units. The owners of the individual condominium units within the three residential buildings were not allowed to vote on these amendments. On December 29, 1994, IDC created and filed the Sixth Amendment to the GIS condominium declaration. The Sixth Amendment represented the exercise of the rights of the master declarant, then held by IDC, to convert the so-called Reserved Area into a Master Unit. That unit became known as the North Unit.

In 1997, IDC began contemplating the development of the North Unit and by late 1997 and into 1998 was in the process of creating and building a facility on that unit that became known as the Newport Regatta Club. In connection with these efforts IDC engaged More and Edwards & Angell to procure additional title insurance for its rights in and to the North Unit. By letter dated December 5, 1997 More wrote to Michael Mellion of the Plaintiff Commonwealth to request the issuance of a title insurance policy for the North Unit and for the development rights associated with the North Unit.

Mellion instructed his title examiner to commence his review of the title from the date of the Chicago Policy, October 21, 1994. On January 13, 1998, Commonwealth issued a title insurance policy in the amount of $7 million. That policy insured the interests of IDC Properties, Inc. as the "fee simple" owner of three parcels. The first parcel consisted of a metes and bounds description of the land described as the North Unit. That land is the site of the Newport Regatta

Club. The second parcel consisted of the "Special Declarant's Right" as defined in the "Fifth Amendment" to the GIS condominium declaration dated December 29, 1994. The third parcel consisted of the "right of a declarant, in said Declarant's capacity as Owner" to "construct buildings and other improvements on the North Development Unit."

On February 11, 1999, Commonwealth issued an endorsement to its original policy by which it increased the amount of the insurance to $12 million and added two parcels. The two additional parcels were the Master Units known as the West Unit and the South Unit.

On May 29, 1999, the condominium associations of America Condominium, Capella South Condominium and Harbor House Condominium, (collectively the "Condominium Associations") commenced an action against IDC challenging the effectiveness of the Third, Fourth and Fifth Amendments to the GIS condominium master declaration. (the "State Court Litigation"). On June 13,2001 the Rhode Island Superior Court in and for the County of Newport (the "Superior Court") entered a judgment on the parties' cross motions for partial summary judgment determining that the Third, Fourth and Fifth Amendments were null and void by reason, amongst other things, of the failure to solicit the votes of the individual condominium unit owners. The Superior Court entered an Order declaring the amendments null and void, declaring IDC's "right to develop Goat Island" as "expired" and declaring that the Master Association was without right to act in behalf of the "unit owners." Both IDC and the Condominium Associations pursued cross appeals to the Rhode Island Supreme Court seeking to determine the status of the title to the South, West and North Units.

On August 24,2001, the Plaintiff here, Commonwealth, commenced this action for a declaratory judgment. The gravamen of the Plaintiffs complaint was that IDC had not informed it about a dispute with the Condominium Associations which implicated the efficacy of the

Third, Fourth and Fifth Amendments. Discovery in this action took place through early 2003. This action was subsequently stayed.

On March 23,2004, the Rhode Island Supreme Court issued a 51 page opinion in the State Court Litigation making new determinations about the ownership of the Property. The opinion included a 22 page dissent, (Flanders, J.). America Condominium Association, Inc. et al v. IDC, Inc., 844 A.2d 117 (R.I. 2004) ***(America Condominium*** I), decision clarified on reargument, America Condominium Association, Inc. et al v. IDC, Inc., 870 A.2d 434 (R.I. 2005) ***(America Condominium*** II).

The Supreme Court subsequently granted the Defendant's petition for re-argument and, on April 8,2005, issued its opinion in ***America Condominium* II.** In ***America Condominium* I** the Supreme Court affirmed the Superior Court's findings that the Third, Fourth and Fifth Amendments were null and void. Notably, there was never any challenge to the validity of the Sixth Amendment creating the North Unit. See, America Condominium I, 844 A.2d at 124 n. 12. The Supreme Court went on to determine in ***America Condominium*** I, however, that title to the West, South and North Units, had, as a result of the failure of the Third, Fourth and Fifth Amendments, then vested in "the individual unit owners in fee simple." Id., at 133. In ***America Condominium*** *II,* the Supreme Court reconsidered and withdrew this finding. In ***America Condominium*** *II,* the Supreme Court looked more closely at the creation of the South, West and North Units and paid particularly close attention to the assertion of IDC, that, regardless of the status of its development rights, it remained the owner of the Master Units, which consisted of the airspace over and above the land underlying the South, West and North Units. The Supreme Court concluded that

> A Unit is not simply created by describing a parcel of real estate, whether or not it be airspace only, and designating it as a unit (or a master unit) in declaration of a condominium. There must also be compliance with the[Rhode Island Condominium] Act.

America Condominium II, 870 A.2d at 442.

The Supreme Court, in ***America Condominium*** 11, determined, quite apart from the dispute over development rights, that the original creation of the West and South Units was not in compliance with the Rhode Island Condominium Act and accordingly, "because the South and West Units were never validly created units within the meaning of the Act, they were, and remain, common elements." 870 A.2d at 440. The Supreme Court reached the same conclusion with respect to the North Unit ("Consequently, these portions of the condominium always were, and remain common elements.") 870 A.2d at 442.

In essence, the Rhode Island Supreme Court on April 8,2005, after four years of litigation, determined that the Property insured by Commonwealth and identified in its policy as Parcel 1 (the North Unit) and Parcels 4 and 5 (the South Unit and West Unit) never separately existed as a matter of law and that "title rested with the unit owners in common ownership" on and after January 13,1998.870 A.2d at 443.

## Argument

### I. Motion For Leave to Add Third Party Complaint

IDC seeks leave to add More and Edwards & Angell as Third Party Defendants in this action. Rule 14 of the Federal Rules of Civil Procedure governs when a defendant may add a third party claim. The Rule provides that if the claim is asserted more than 10 days after serving the

original answer, the party asserting the claim must seek leave of Court. Fed. R. Civ. P. Rule 14 (a). The purpose of Rule 14 is:

> [T]o avoid the circuity of action, and to dispose, in one litigation, of an entire subject matter arising from a particular set of facts, and to accomplish ultimate justice for all concerned by avoiding two actions which should be tried together.

United States For The Use And Benefit Of Robert A. LaCentra Co., Inc. v. Edward R. Marden, 294 F. Supp. 21, 23 (D. R.I. 1968).

In the instant case, the discovery adduced to date makes it evident that IDC had no direct involvement in procuring the title insurance from Commonwealth. The title insurance was procured by More and Edwards & Angell on behalf of IDC. The Plaintiff, Commonwealth, must prove that IDC engaged in intentional misconduct to permit it to rely upon the exclusionary clause which carves out defects, liens or encumbrances created, suffered, assumed or agreed to by the insured, IDC, see, American Title Insurance Company v. East West Financial, 16 F.3d 449,455 (1st Cir. 1994). IDC recognizes that it is not likely that Commonwealth will prevail in its attempts to avoid payment under its policy. Until such time as the Court has determined whether or not coverage exists, IDC will not yet have suffered any loss by reason of the conduct of More and Edwards & Angell. The case law is clear, however, that a third party complaint is proper where liability has not yet been established as long as the third party **may** become liable to the defendant and third party plaintiff. See, Putnam Resources v. SLT Warehouse Comvany, Inc., 23 Fed. R. Serv. 3d 73,1991 WL 472877 (D.R.I. 1991).

In the instant case, if the Court determines that IDC may not collect on the Commonwealth policies, then More and Edwards & Angell will be liable to IDC. To resolve the instant action as it stands, the trier of fact will necessarily have to hear and determine the evidence concerning the conduct of More and Edwards & Angell. Federal Courts encourage the

pragmatic practice of joining all parties and claims in a single forum. In re Oil Spill by Amoco Cadiz off Coast of France on March 16, 1978, 491 F. Supp. 161 (N.D. 11.1979). Delay is not a strong reason for denying a defendant the opportunity to maintain a third party claim. Lewis v. City of Bluefield, 48 F.R. D. 435 (S.D. W. Va. 1969).

The addition of the third party complaint in this action will promote the resolution of this matter by including all parties, avoid the possibility of inconsistent results and promote the interests of justice by providing IDC a forum in which to resolve all issues surrounding its right to payment under the Commonwealth policy.

II. Motion to Amend Answer and Counterclaim

IDC seeks to amend its Answer and Counterclaim by conforming the pleading to the facts of this matter as now developed by ***America Condominium* I** and ***America Condominium II***, by adding affirmative claims for payment of the policy amount and by including a claim for trial by jury. Rule 15 of the Federal Rule of Civil Procedure governs the amendment of pleadings and requires that IDC seek leave of Court. Fed. R. Civ. P. Rule 15. The decision whether to grant leave to amend lies within the discretion of the trial court. Larocca v. Borden, Inc., 276 F.3d 22 (1st Cir. 2002).

In reviewing a motion to amend, the Court's focus is on whether or not permitting the amendment will unfairly prejudice the other party. Bond Opportunity Fund II, LLC, v. Heffernan, 340 F. Supp. 146,155-156 (D. R. I. 2004). In this case, Commonwealth chose to commence this litigation well before any final determination had been made as to the status of title to the Property, and well before any loss occurred or any demand had been made on Commonwealth for payment under the Policy. While Commonwealth was within its rights to do so, IDC promptly raised the issue of ripeness. Now that the facts as they relate to the status of

title to the Property have been fully and finally developed during the pendency of this proceeding, Commonwealth is not prejudiced by the amendment of the Answer and Counterclaim.

IDC also seeks in its Amended Answer and Counterclaim to add a demand for trial by jury. While the case law is clear that a party cannot use an amended pleading to assert a jury demand which has previously been waived, see, Advent Electronics v. Buckman, 918 F. Supp. 260, (N.D. Ill. 1996), the Court may in its discretion permit a jury demand to be added in an amended pleading on a new count in the pleading and to conduct a jury trial on all matters. Bravman v. Bassett Furniture Industries, Inc., 64 F.R.D. 7 (E.D. Pa. 1974).

In this case two separate grounds would permit the assertion of the jury demand. If the Court allows the addition of the third party complaint, IDC will be entitled to a jury trial on those claims. It would make little sense to bifurcate those clams from the original complaint. Secondly, IDC now asserts a right to payment in light of the decision in ***America Condominium*** *II* and maintains that the continued prosecution of this action by Commonwealth and failure to make payment in light of that decision constitutes bad faith. IDC is entitled to a jury trial on those claims.

IDC notes that this action originated as a declaratory judgment action. At the outset, it was not evident that IDC would have a right to trial by jury. See, Tavlor v. State of Rhode Island, 736 F. Supp. 15 (D. R. I. 1990); Maritimes and Northeast Pipeline L.L.C. v. 1.43 acres in the Town of Lisbon, 248 F.3d 1127,2000 WL 1920031 (1st Cir. 2000) (Unpublished Decision). IDC's right to a trial by jury has now matured and IDC seeks to exercise that right given the substantial amounts at stake in this matter and the enormous consequences for IDC in any disposition of this matter.

III. <u>Motion To Conduct Additional Discovery</u>

IDC's motion to add a third party complaint will necessitate an additional period of discovery in this matter. Regardless of the outcome of that motion, however, the facts of this matter have been dramatically altered by the decisions in ***America Condominium* I** and ***America Condominium II*** and IDC should be afforded the opportunity to examine witnesses in light of those decisions and to engage expert witnesses and interview other witnesses who may assist the trier of fact in deciding this matter. The crux of the Complaint and the focus of discovery to date has been centered on the validity of the Third, Fourth and Fifth Amendments to the GIS condominium declaration. As it turns out, and as the Rhode Island Supreme Court made clear in ***America Condominium*** 11, those arguments and positions are entirely beside the point. Regardless of the challenges to the Third, Fourth and Fifth Amendments, the underlying interest of IDC in the property described as parcels 1,4 and 5 never existed, as it was never validly created in 1988. This fact was not asserted by any party until the Rhode Island Supreme Court issued its decision on April 8,2005. The facts relied upon by the Rhode Island Supreme Court were all a matter of public record and were all evident at all times on and after January **3,** 1988. Commonwealth's apparently continuing attempts to avoid payment under the policy are akin to the allegation that a hypothetical title insured homeowner never disclosed a dispute with a neighbor over a fence boundary, the adjudication of which results in the discovery that the homeowner's deed to his home was never recorded. The ultimate loss now realized by IDC was completely unrelated to the efficacy of the Third, Fourth and Fifth Amendments. IDC never held valid title to parcels 1 ,4 and 5 to start with. The defects which caused the loss were not defects which IDC created, suffered or assumed.

In light of the dramatically different facts now created by ***America Condominium* I** and ***America Condominium II*, IDC** seeks leave to complete discovery and preparation for the trial of this matter in light of those facts. **IDC** also seeks to adjudicate all issues which relate to this matter in a single forum by adding the third party complaint and amended answer and counterclaim and by completing the discovery which relates to those claims.

Wherefore, IDC Properties, Inc. prays that the Court enter an order allowing its motions to conduct additional discovery, add a third party complaint and serve an amended answer and counterclaim and that the Court grant such other and further relief **as** is just.

IDC PROPERTIES, **INC.,** Defendant

**By its attorneys,**

W. Mark Russo **(#3937)**
Christopher M. **Mulhearn** (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: **(401)** 455-1000
Fax: (401) 455-7778

Of Counsel:

Stephen F. Gordon (Mass **BBO#203600)**
Peter J. **Haley** (Mass **BBO#543858)**
**Gordon Haley** LLP
101 Federal Street
Boston, MA 02110
Tel: **(617)** 261-0100
Fax: (617) 261-0789

Dated: October 31,2005

**CERTIFICATION**

I hereby certify that on this 31st day of October, 2005, I served a true and accurate copy of the foregoing upon the following via first-class, postage prepaid mail.

Steven E. Snow, Esq.
**Partridge Snow & Hahn**
180 South Main Street
Providence, RI 02903-7120

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, Plaintiff, | |
| v. | Civil Action No. 01-400 T |
| IDC PROPERTIES, INC., Defendant and Third Party Plaintiff | |
| v. | THIRD PARTY COMPLAINT and DEMAND FOR TRIAL BY JURY |
| TIMOTHY MORE, and EDWARDS & ANGELL LLP Third Party Defendants. | |

The Defendant and Third Party Plaintiff, IDC Properties, Inc. ("IDC"), for its Third Party Complaint in this matter states the following:

Parties

1. The Third Party Plaintiff, IDC Properties, Inc. ("IDC"), is a Rhode Island corporation with a usual place of business at Newport, Rhode Island.
2. The Third Party Defendant, Timothy More ("More"), is an individual licensed to practice law in the State of Rhode Island, and was formerly a member of the Defendant Edwards & Angell LLP.
3. The Third Party Defendant, Edwards & Angell LLP ("Edwards & Angell"), is a limited liability partnership organized under the laws of Rhode Island with a usual place of business at Providence, Rhode Island.

**EXHIBIT A**

Facts

4. In 1994, IDC acquired title to several parcels of land located on Goat Island in Newport, Rhode Island. (the "Property")
5. The Property included three parcels which were designated as so-called Master Units of a Rhode Island master condominium declaration. These parcels came to be identified as the South Unit, the West Unit and the North Unit.
6. From 1994 through 2005, Edwards & Angell continued to provide legal services to one or more of Thomas Roos, IDC or affiliates of IDC.
7. More and Edwards & Angell represented IDC in connection with various disputes with the America Condominium Association, Inc., Goat Island South Condominium Association, Capella South Condominium Association and Harbor Houses Condominium Association, Inc. (collectively the "Condominium Associations")
8. More and Edwards &Angell on one or more occasions provided IDC with written opinions and assurances that IDC held good title to all of the Property and would be free to develop the Property.
9. In late 1997, IDC was making plans to commence development on the North Unit.
10. In connection with these efforts, IDC engaged More and Edwards & Angell to procure, to obtain with particular care and effort, title insurance for the Property. More contacted the Plaintiff, Commonwealth Land Title Insurance Company ("Commonwealth"), and arranged for title insurance to issue in the amount of $7 million through a policy dated January 13, 1998.

**EXHIBIT A**

11. Subsequently, as a result of IDC's increased development activity and the increasing value of the Property, IDC requested that More arrange for $12 million of title insurance and to include the South and West Units in the policy. More and Edwards & Angell thereafter procured from Plaintiff a policy endorsement dated February 11, 1999 increasing the amount of title insurance to $12 million (the underlying policy and the subsequent endorsement hereinafter referred to in the aggregate as the "Policy").

12. All communications, correspondence, invoices and transmission of the Policy took place between More and the Plaintiff, Commonwealth.

13. IDC and its officers and employees had no active role in procuring the Policy

14. On and after the issuance of the Policy, IDC acted in reliance upon the existence of the Policy and the $12 million coverage provided by the Policy.

15. The Plaintiff Commonwealth seeks a determination that IDC is not entitled to coverage under the Policy.

Count I
<u>Indemnification</u>

16. IDC, the Third Party Plaintiff, repeats and realleges Paragraphs 1 through 15 as set forth above.

17. If the Court determines that IDC is not entitled to coverage under the Policy because of the conduct of More and Edwards & Angell in procuring the Policy, IDC is entitled to be indemnified and held harmless by More and Edwards & Angell by reason of their wrongful conduct resulting in the loss of the $12 million which would have been provided by the Policy, but for the wrongful conduct of More and Edwards & Angell.

**EXHIBIT A**

Count II
Breach of Fiduciary Duty

18. IDC, the Third Party Plaintiff, repeats and realleges Paragraphs 1 through 17 as set forth above.

19. More and Edwards & Angell owed a fiduciary duty to IDC arising out of their role in procuring the title insurance Policy for the Property and as counsel to IDC.

**20.** IDC relied upon More and Edwards & Angell to procure the title insurance Policy and to take all necessary steps, make all appropriate disclosures and to take any and all other action necessary to the issuance of a valid title insurance policy on the Property in the amount of **$12** million.

**21.** More and Edwards Angell were aware that IDC was relying upon them to procure title insurance and to take all necessary steps, make all appropriate disclosures and to take any and all other action necessary to the issuance of a valid title insurance policy on the Property in the amount of **$12** million.

**22.** If the Court determines that IDC is not entitled to coverage under the Policy because of the conduct of More and Edwards & Angell in procuring the Policy, More and Edwards & Angell will have breached their fiduciary duty to IDC.

**23.** IDC will have suffered damages as a direct and proximate result of the breach of fiduciary duty by More and Edwards & Angell.

Count III
Breach of Contract

**24.** IDC, the Third Party Plaintiff, repeats and realleges Paragraphs 1 through **23** as set forth above.

**EXHIBIT A**

25. IDC entered into a contract with More and Edwards & Angell to procure good and valid title insurance for the Property.

26. IDC agreed to, and did, remit to More and Edwards & Angell all amounts necessary to obtain the Policy and to compensate More and Edwards & Angell for doing so.

27. Edwards & Angell and More agreed to procure title insurance and to take all necessary steps, make all appropriate disclosures and to take any and all other action necessary to the issuance of a valid title insurance policy on the Property in the amount of $12 million.

28. If the Court determines that IDC is not entitled to coverage under the Policy, More and Edwards & Angell will have breached their contract with IDC.

29. IDC will have suffered damages as a direct result of the breach of contract by More and Edwards & Angell.

Count IV
Negligence- Legal Malpractice

30. IDC, the Third Party Plaintiff, repeats and realleges Paragraphs 1 through 29 as set forth above.

31. More and Edwards & Angell acted as counsel to IDC in procuring the title insurance Policy for the Property.

32. If the Court determines that IDC is not entitled to coverage under the Policy , More and Edwards & Angell will have failed to exercise reasonable care and diligence in providing their services.

33. If the Court determines that IDC is not entitled to coverage under the Policy, IDC will have suffered a loss in the amount of the Policy as a direct and proximate result of the negligence of More and Edwards & Angell,.

**EXHIBIT A**

Wherefore, IDC Properties, Inc., the Third Party Plaintiff, prays that:

1. On Count I, that the Court determine the damages suffered by the Third Party Plaintiff, enter judgment in that amount, plus interest and costs;
2. On Count II, that the Court determine the damages suffered by the Third Party Plaintiff, enter judgment in that amount, plus interest and costs;
3. On Count III, that the Court determine the damages suffered by the Third Party Plaintiff, enter judgment in that amount, plus interest and costs;
4. On Count IV, that the Court determine the damages suffered by the Third Party Plaintiff, enter judgment in that amount, plus interest and costs; and
5. That the Court the grant such other and further relief as is just.

**PLAINTIFFS DEMAND TRIAL BY JURY**

IDC PROPERTIES, INC., Defendant

By its attorneys,

_______________________________

W. Mark Russo (#3937)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

**EXHIBIT A**

Of Counsel:

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
**Gordon Haley** LLP
101 Federal Street
Boston, MA 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: __________________

**Certification**

I hereby certify that on this **31st** day of October, 2005, I served a true and accurate copy of the foregoing upon the following via first-class, postage prepaid mail.

Steven E. Snow, Esq.
**Partridge Snow & Hahn**
180 South Main Street
Providence, RI 02903-7120

______________________________