UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>IDC PROPERTIES, INC.,<br><br>Defendant. | Civil Action No. 01-400 T |

MOTION OF DEFENDANT IDC PROPERTIES, INC.
FOR LEAVE TO SERVE AMENDED ANSWER AND COUNTERCLAIM

The Defendant IDC Properties, Inc. ("IDC") moves the Court in accordance with Fed. R. Civ. P. R. 15 for leave to file and serve an Amended Answer and Counterclaim in this action. In support of its motion, IDC submits herewith a Memorandum of Law and states the following:

1. This action was commenced on August 24,2001 as a complaint for declaratory judgment by the Plaintiff title insurer against IDC. The Complaint was based upon a title insurance policy effective February 11, 1999, providing IDC with $12 million in title insurance (the "Policy") for property it owned on Goat Island in Newport, Rhode Island (the "Property").

2. At the time the action was commenced, IDC had provided notice to the title insurer of the pendency of state court litigation styled *America Condominium Association, Inc., et al v. IDC, Inc., et al* (the "State Court Litigation"). This action was commenced after the issuance of an order entered in the State Court Litigation on June 13,2001, which held that certain amendments to a master condominium declaration were void and determined that IDC's

development rights on Goat Island had expired (the "Superior Court Order"). The Superior Court Order was attached as an exhibit to the Complaint in this action.

3. The parties conducted certain discovery through early 2003. The Court subsequently stayed this litigation during the pendency of an appeal of the Superior Court Order.

4. On March 23,2004, the Rhode Island Supreme Court issued a 51 page opinion in the State Court Litigation making new determinations about the ownership of the Property, the opinion included a 22 page dissent, (Flanders, J.). America Condominium Association, Inc. et al v. IDC, Inc., 844 A.2d 117 (R.I. 2004) (America Condominium I), decision clarified on reargument, America Condominium Association, Inc. et al v. IDC, Inc., 870 A.2d 434 (R.I. 2005) (America Condominium *II*).

5. The Supreme Court subsequently granted the Defendant's petition for re-argument and, on April 8,2005, issued an opinion, America Condominium II, reconsidering and restating certain determinations made in America Condominium I about title to the Property. America Condominium II , amongst other things, determined that two of the parcels which comprise the Property, the so-called South Unit and West Unit "never were validly created units within the meaning of the act, they were, and remain, common elements." 870 A.2d at 440. The Court also further determined that the so-called North Unit was also never a valid unit. Id. at 441-442.

6. The Defendant seeks to amend its Answer and Counterclaim to conform the facts asserted therein to the subsequent developments since the commencement of this action as set forth above, to assert certain claims which have matured since the commencement of this case and to include a claim for trial by jury.

7. IDC has attached hereto as Exhibit A an Amended Answer and Counterclaim.

8. Request for Oral Argument. IDC requests the opportunity to present oral argument on this motion, as it believes such argument would aid and assist the Court in the adjudication of this motion.

Wherefore, IDC Properties, Inc. prays that the Court enter an order granting it leave to file and serve an Amended Answer and Counterclaim in substantially the form attached hereto as Exhibit A and that the Court grant such other and further relief as is just.

IDC PROPERTIES, INC., Defendant

By its attorneys,

W. R. Russo (#3937)

Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

Of Counsel:

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
**Gordon Haley** LLP
101 Federal Street
Boston, MA 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: October 31, 2005

**CERTIFICATION**

I hereby certify that on this 31st day of October, 2005, I served a true and accurate copy of the foregoing upon the following via first-class, postage prepaid mail.

Steven E. Snow, Esq.
**Partridge Snow & Hahn**
180 South Main Street
Providence, RI 02903-7120

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>IDC PROPERTIES, INC.,<br><br>Defendant. | ) | Civil Action No. 01-400 T |

MEMORANDUM OF LAW OF DEFENDANT IDC PROPERTIES, INC.
IN SUPPORT OF 1) MOTION FOR LEAVE TO CONDUCT CERTAIN
ADDITIONAL DISCOVERY; 2) MOTION FOR LEAVE TO SERVE
THIRD PARTY COMPLAINT; AND 3) MOTION FOR LEAVE TO SERVE
AMENDED ANSWER AND COUNTERCLAIM

Introduction

The Defendant IDC Properties, Inc. ("IDC") submits this memorandum of law in support of its Motion for Leave to Conduct Certain Discovery, its Motion for Leave to File Third Party Complaint and its Motion for Leave to Serve Amended Answer and Counterclaim. This case was commenced as a declaratory judgment action by the Plaintiff title insurer seeking to be excused from the obligation to make payment under a $12 million title insurance policy issued for the benefit of IDC. Since the commencement of this action and during a stay of this proceeding, the Rhode Island Supreme Court has issued two decisions dramatically altering the legal status of the title insured by the Plaintiff IDC, through its three motions, seeks leave to join in this action a third party, the lawyers who procured the title insurance, to avoid the potential for inconsistent results and unnecessary future litigation; to amend its answer and

counterclaim to conform to the present legal status of title as now established by the Rhode Island Supreme Court, to add claims which have arisen since the commencement of this case; and to conduct additional discovery necessitated by the subsequent Rhode Island Supreme Court decisions and the amended pleadings.

Facts

Tom Roos, along with other members of his family, and unrelated parties, was a shareholder and director of a Rhode Island company, Globe Manufacturing Co. ("Globe"), which, amongst other things, owned the land on Goat Island in Newport, Rhode Island. In 1988, there were three existing residential buildings on Goat Island known as America Condominium (46 units), Capella South Condominium (89 units) and Harbor House Condominium (19 townhomes). The island also contained a marina and a hotel. On January 13, 1988, Globe recorded a declaration establishing Goat Island South – a Waterfront Condominium (the "GIS condominium"). The declaration described six defined parcels, the three existing residential buildings and three separately defined parcels, which came to be known as the West Unit, the South Unit and the Reserved Area (later known as the "North Unit"). At the time the declaration was filed, Globe owned a majority of the units in the three residential buildings. The condominium consisted of approximately 23 acres on the Island. The units known as West, South and North consisted of vacant undeveloped land on the island, previously owned outright by Globe. The first amended declaration of the GIS condominium established the South Unit and West Unit as what were referred to as Master Units and defined those Units by metes and bounds in the declaration. The declaration also reserved what were known as development rights in the South Unit and West Unit and the right to convert the area known as the Reserved Area into a so-called Master Unit. The first amended declaration of the GIS condominium was filed

on March 3, 1988. The first amendment, among other things, established December 31, 1994 as the date by which the declarant, Globe, could exercise certain development rights in the Master Units, and by which it could elect to convert the Reserved Area into a Master Unit or withdraw that area altogether from the GIS condominium.

In October, 1994, Tom Roos entered into a series of agreements to purchase the interests of Globe on Goat Island. Those interests included Globe's rights in the GIS condominium (the "Property"). Roos formed IDC, Inc. and IDC Properties, Inc. to carry out these transactions. At the time of the purchase, Roos made arrangements to simultaneously sell the hotel on the island. Accordingly, the substance of the transaction was Roos' purchase of the marina and the 23 acres which comprised the GIS condominium. Roos was represented in the transaction by Timothy More ("More") and his law firm, Edwards & Angell LLP ("Edwards & Angell"). At the time IDC acquired the property, More and Edwards & Angell procured title insurance on behalf of IDC fiom Chicago Title Insurance Company ("Chicago"). The policy issued by Chicago (the "Chicago Policy") insured IDC's fee simple interest in the two existing master units, the South Unit and the West Unit and the "special declarant's rights in and to GOAT ISLAND SOUTH – A WATERFRONT CONDOMINIUM." The Chicago Policy also insured IDC's interest in a number of individual units in the three residential buildings. The Chicago Policy was issued as of October 21, 1994 in the face amount of $10 million.

Prior to the time of IDC's acquisition of the Property, Globe as the master declarant had purported to extend its development rights through a Third Amendment to the GIS condominium declaration. Subsequent to IDC's purchase, IDC at the direction of More and Edwards & Angell created and filed the Fourth and Fifth amendments to the GIS condominium declaration, all on or before December 31, 1994. The Third, Fourth and Fifth amendments to the GIS condominium

declaration all revolved around the extension of the original December 31, 1994 deadline for development rights. The Third, Fourth and Fifth amendments were all submitted to a vote of the master condominium association of the GIS condominium. That master association consisted of representatives from the 6 Master Units. Each of the three residential buildings was represented on the Master Association by one representative. Globe, and later IDC, effectively controlled the votes of the master association through its ownership of a majority of the units. The owners of the individual condominium units within the three residential buildings were not allowed to vote on these amendments. On December 29,1994, IDC created and filed the Sixth Amendment to the GIS condominium declaration. The Sixth Amendment represented the exercise of the rights of the master declarant, then held by IDC, to convert the so-called Reserved Area into a Master Unit. That unit became known as the North Unit.

In 1997, IDC began contemplating the development of the North Unit and by late 1997 and into 1998 was in the process of creating and building a facility on that unit that became known as the Newport Regatta Club. In connection with these efforts IDC engaged More and Edwards & Angell to procure additional title insurance for its rights in and to the North Unit. By letter dated December 5, 1997 More wrote to Michael Mellion of the Plaintiff Commonwealth to request the issuance of a title insurance policy for the North Unit **and** for the development rights associated with the North Unit.

Mellion instructed his title examiner to commence his review of the title from the date of the Chicago Policy, October 21, 1994. On January 13, 1998, Commonwealth issued a title insurance policy in the amount of $7 million. That policy insured the interests of IDC Properties, Inc. as the "fee simple" owner of three parcels. The first parcel consisted of a metes and bounds description of the land described as the North Unit. That land is the site of the Newport Regatta

Club. The second parcel consisted of the "Special Declarant's Right" as defined in the "Fifth Amendment" to the GIS condominium declaration dated December 29, 1994. The third parcel consisted of the "right of a declarant, in said Declarant's capacity as Owner" to "construct buildings and other improvements on the North Development Unit."

*On* February 11, 1999, Commonwealth issued an endorsement to its original policy by which it increased the amount of the insurance to $12 million and added two parcels. The two additional parcels were the Master Units known as the West Unit and the South Unit.

*On* May 29, 1999, the condominium associations of America Condominium, Capella South Condominium and Harbor House Condominium, (collectively the "Condominium Associations") commenced an action against IDC challenging the effectiveness of the Third, Fourth and Fifth Amendments to the GIS condominium master declaration. (the "State Court Litigation"). On June 13,2001 the Rhode Island Superior Court in and for the County of Newport (the "Superior Court") entered a judgment on the parties' cross motions for partial summary judgment determining that the Third, Fourth and Fifth Amendments were null and void by reason, amongst other things, of the failure to solicit the votes of the individual condominium unit owners. The Superior Court entered an Order declaring the amendments null and void, declaring IDC's "right to develop Goat Island" as "expired" and declaring that the Master Association was without right to act in behalf of the "unit owners." Both IDC and the Condominium Associations pursued cross appeals to the Rhode Island Supreme Court seeking to determine the status of the title to the South, West and North Units.

On August 24,2001, the Plaintiff here, Commonwealth, commenced this action for a declaratory judgment. The gravamen of the Plaintiffs complaint was that IDC had not informed it about a dispute with the Condominium Associations which implicated the efficacy of the

Third, Fourth and Fifth Amendments. Discovery in this action took place through early 2003. This action was subsequently stayed.

On March 23,2004, the Rhode Island Supreme Court issued a 51 page opinion in the State Court Litigation making new determinations about the ownership of the Property. The opinion included a 22 page dissent, (Flanders, J.). America Condominium Association. Inc. et al v. IDC, Inc., 844 A.2d 117 ***(R.I.*** 2004) ***(America Condominium* I),** decision clarified on reargument, America Condominium Association, Inc. et al v. IDC, Inc., 870 A.2d 434 ***(R.I.*** 2005) ***(America Condominium*** I . .

The Supreme Court subsequently granted the Defendant's petition for re-argument and, on April 8,2005, issued its opinion in ***America Condominium* II.** In ***America Condominium* I** the Supreme Court affirmed the Superior Court's findings that the Third, Fourth and Fifth Amendments were null and void. Notably, there was never any challenge to the validity of the Sixth Amendment creating the North Unit. See, America Condominium I, 844 A.2d at 124 n. 12. The Supreme Court went on to determine in ***America Condominium*** I, however, that title to the West, South and North Units, had, as a result of the failure of the Third, Fourth and Fifth Amendments, then vested in "the individual unit owners in fee simple." Id., at 133. In ***America Condominium II,*** the Supreme Court reconsidered and withdrew this finding. In ***America Condominium II,*** the Supreme Court looked more closely at the creation of the South, West and North Units and paid particularly close attention to the assertion of IDC, that, regardless of the status of its development rights, it remained the owner of the Master Units, which consisted of the airspace over and above the land underlying the South, West and North Units. The Supreme Court concluded that

> A Unit is not simply created by describing a parcel of real estate, whether or not it be airspace only, and designating it as a unit (or a master unit) in declaration of a condominium. There must also be compliance with the[Rhode Island Condominium] Act.

America Condominium II, 870 A.2d at 442.

The Supreme Court, in ***America Condominium*** 11, determined, quite apart from the dispute over development rights, that the original creation of the West and South Units was not in compliance with the Rhode Island Condominium Act and accordingly, "because the South and West Units were never validly created units within the meaning of the Act, they were, and remain, common elements." 870 A.2d at 440. The Supreme Court reached the same conclusion with respect to the North Unit ("Consequently, these portions of the condominium always were, and remain common elements.") 870 A.2d at 442.

In essence, the Rhode Island Supreme Court on April 8,2005, after four years of litigation, determined that the Property insured by Commonwealth and identified in its policy as Parcel 1 (the North Unit) and Parcels 4 and 5 (the South Unit and West Unit) never separately existed as a matter of law and that "title rested with the unit owners in common ownership" on and after January 13,1998.870 A.2d at 443.

## Argument

### I. Motion For Leave to Add Third Party Complaint

IDC seeks leave to add More and Edwards & Angell as Third Party Defendants in this action. Rule 14 of the Federal Rules of Civil Procedure governs when a defendant may add a third party claim. The Rule provides that if the claim is asserted more than 10 days after serving the

original answer, the party asserting the claim must seek leave of Court. Fed. R. Civ. P. Rule 14 (a). The purpose of Rule 14 is:

> [T]o avoid the circuity of action, and to dispose, in one litigation, of an entire subject matter arising from a particular set of facts, and to accomplish ultimate justice for all concerned by avoiding two actions which should be tried together.

United States For The Use And Benefit Of Robert A. LaCentra Co., Inc. v. Edward R. Marden, 294 F. Supp. 21, 23 (D. R.I. 1968).

In the instant case, the discovery adduced to date makes it evident that IDC had no direct involvement in procuring the title insurance from Commonwealth. The title insurance was procured by More and Edwards & Angell on behalf of IDC. The Plaintiff, Commonwealth, must prove that IDC engaged in intentional misconduct to permit it to rely upon the exclusionary clause which carves out defects, liens or encumbrances created, suffered, assumed or agreed to by the insured, IDC, see, American Title Insurance Company v. East West Financial, 16 F.3d 449,455 (1st Cir. 1994). IDC recognizes that it is not likely that Commonwealth will prevail in its attempts to avoid payment under its policy. Until such time as the Court has determined whether or not coverage exists, IDC will not yet have suffered any loss by reason of the conduct of More and Edwards & Angell. The case law is clear, however, that a third party complaint is proper where liability has not yet been established as long as the third party *may* become liable to the defendant and third party plaintiff. See, Putnam Resources v. SLT Warehouse Company, Inc., 23 Fed. R. Serv. 3d 73,1991 WL 472877 (D.R.I. 1991).

In the instant case, if the Court determines that IDC may not collect on the Commonwealth policies, then More and Edwards & Angell will be liable to IDC. To resolve the instant action as it stands, the trier of fact will necessarily have to hear and determine the evidence concerning the conduct of More and Edwards & Angell. Federal Courts encourage the

pragmatic practice of joining all parties and claims in a single forum. In re Oil Spill by Amoco Cadiz off Coast of France on March 16, 1978,491 F. Supp. 161 (N.D. Il. 1979). Delay is not a strong reason for denying a defendant the opportunity to maintain a third party claim. Lewis v. City of Bluefield, 48 F.R. D. 435 (S.D. W. Va. 1969).

The addition of the third party complaint in this action will promote the resolution of this matter by including all parties, avoid the possibility of inconsistent results and promote the interests of justice by providing IDC a forum in which to resolve all issues surrounding its right to payment under the Commonwealth policy.

II. Motion to Amend Answer and Counterclaim

IDC seeks to amend its Answer and Counterclaim by conforming the pleading to the facts of this matter as now developed by ***America Condominium* I** and ***America Condominium II*,** by adding affirmative claims for payment of the policy amount and by including a claim for trial by jury. Rule 15 of the Federal Rule of Civil Procedure governs the amendment of pleadings and requires that IDC seek leave of Court. Fed. R. Civ. P. Rule 15. The decision whether to grant leave to amend lies within the discretion of the trial court. Larocca v. Borden, Inc., 276 F.3d 22 (1st Cir. 2002).

In reviewing a motion to amend, the Court's focus is on whether or not permitting the amendment will unfairly prejudice the other party. Bond Opportunity Fund II, LLC. v. Heffeman, 340 F. Supp. 146,155-156 (D. R. I. 2004). In this case, Commonwealth chose to commence this litigation well before any final determination had been made as to the status of title to the Property, and well before any loss occurred or any demand had been made on Commonwealth for payment under the Policy. While Commonwealth was within its rights to do so, IDC promptly raised the issue of ripeness. Now that the facts as they relate to the status of

title to the Property have been fully and finally developed during the pendency of this proceeding, Commonwealth is not prejudiced by the amendment of the Answer and Counterclaim.

IDC also seeks in its Amended Answer and Counterclaim to add a demand for trial by jury. While the case law is clear that a party cannot use an amended pleading to assert a jury demand which has previously been waived, see, Advent Electronics v. Buckman, 918 F. Supp. 260, (N.D. Ill. 1996), the Court may in its discretion permit a jury demand to be added in an amended pleading on a new count in the pleading and to conduct a jury trial on all matters. Bravrnan v. Bassett Furniture Industries, Inc., 64 F.R.D. 7 (E.D. Pa. 1974).

In this case two separate grounds would permit the assertion of the jury demand. If the Court allows the addition of the third party complaint, IDC will be entitled to a jury trial on those claims. It would make little sense to bifurcate those clams from the original complaint. Secondly, IDC now asserts a right to payment in light of the decision in ***America Condominium*** *II* and maintains that the continued prosecution of this action by Commonwealth and failure to make payment in light of that decision constitutes bad faith. IDC is entitled to a jury trial on those claims.

IDC notes that this action originated as a declaratory judgment action. At the outset, it was not evident that IDC would have a right to trial by jury. See, Taylor v. State of Rhode Island, 736 F. Supp. 15 (D. R. I. 1990); Maritimes and Northeast Pipeline L.L.C. v. 1.43 acres in the Town of Lisbon, 248 F.3d 1127,2000 WL 1920031 (1st Cir. 2000) (Unpublished Decision). IDC's right to a trial by jury has now matured and IDC seeks to exercise that right given the substantial amounts at stake in this matter and the enormous consequences for IDC in any disposition of this matter.

III. Motion To Conduct Additional Discovery

IDC's motion to add a third party complaint will necessitate an additional period of discovery in this matter. Regardless of the outcome of that motion, however, the facts of this matter have been dramatically altered by the decisions in ***America Condominium* I** and ***America Condominium II*** and IDC should be afforded the opportunity to examine witnesses in light of those decisions and to engage expert witnesses and interview other witnesses who may assist the trier of fact in deciding this matter. The crux of the Complaint and the focus of discovery to date has been centered on the validity of the Third, Fourth and Fifth Amendments to the GIS condominium declaration. As it turns out, and as the Rhode Island Supreme Court made clear in ***America Condominium*** 11, those arguments and positions are entirely beside the point. Regardless of the challenges to the Third, Fourth and Fifth Amendments, the underlying interest of IDC in the property described as parcels 1,4 and 5 never existed, as it was never validly created in 1988. This fact was not asserted by any party until the Rhode Island Supreme Court issued its decision on April 8,2005. The facts relied upon by the Rhode Island Supreme Court were all a matter of public record and were all evident at all times on and after January **3,** 1988. Commonwealth's apparently continuing attempts to avoid payment under the policy are akin to the allegation that a hypothetical title insured homeowner never disclosed a dispute with a neighbor over a fence boundary, the adjudication of which results in the discovery that the homeowner's deed to his home was never recorded. The ultimate loss now realized by IDC **was** completely unrelated to the efficacy of the Third, Fourth and Fifth Amendments. IDC never held valid title to parcels 1 ,4 and 5 to start with. The defects which caused the loss were not defects which IDC created, suffered or assumed.

In light of the dramatically different facts now created by ***America Condominium* I** and ***America Condominium II*,** IDC seeks leave to complete discovery and preparation for the trial of this matter in light of those facts. IDC also seeks to adjudicate all issues which relate to this matter in a single forum by adding the third party complaint and amended answer and counterclaim and by completing the discovery which relates to those claims.

Wherefore, IDC Properties, Inc. prays that the Court enter an order allowing its motions to conduct additional discovery, add a third party complaint and serve an amended answer and counterclaim and that the Court grant such other and further relief as is just.

IDC PROPERTIES, INC., Defendant

By its attorneys,

W. Mark Russo (#3937)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo,** P.C.
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

Of Counsel:

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
**Gordon Haley** LLP
101 Federal Street
Boston, MA 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: October 31,2005

## CERTIFICATION

I hereby certify that on this 31st day of October, 2005, I served a true and accurate copy of the foregoing upon the following via first-class, postage prepaid mail.

Steven E. Snow, Esq.
**Partridge Snow & Hahn**
180 South Main Street
Providence, RI 02903-7120

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, Plaintiff, | |
| v. | Civil Action No. 01-400 T |
| IDC PROPERTIES, INC., Defendant. | |

FIRST AMENDED ANSWER AND COUNTERCLAIM
OF IDC PROPERTIES, INC.
AND DEMAND FOR TRIAL BY JURY

The Defendant and Plaintiff in Counterclaim, IDC Properties, Inc. ("IDC"), for its first amended answer and counterclaim in this proceeding ,responds to each numbered paragraph of the Complaint for Declaratory Judgment, and states as follows:

1. IDC admits, upon information and belief, the allegations of Paragraph 1

2. IDC admits the allegations of Paragraph 2.

3. The allegations of Paragraph 3 state a conclusion of law and do not require a response.

4. IDC responds to the allegations of Paragraph 4 by stating the documents attached to the Plaintiffs Complaint as Exhibit A and B speak for themselves, and by denying each and every other attribute to the documents other than those set forth therein. IDC answers further by admitting that Timothy More was IDC's legal counsel at the time.

5. IDC is without sufficient information and knowledge necessary to form a belief as to the truth of the allegations of Paragraph 5. IDC answers further by stating that the document

attached as Exhibit C speaks for itself and by denying each and every other attribute to the document other than that as set forth in Exhibit C.

6. IDC responds to the allegations of Paragraph 6 by stating that the document attached as Exhibit D speaks for itself and by denying each and every other attribute to Exhibit D other than as set forth therein. IDC answers further by admitting that Timothy More was counsel to IDC at the time.

7. IDC responds to the allegations of Paragraph 7 by admitting that the litigation referred to in Paragraph 7 was commenced in May, 1999 and that it thereafter gave notice of the commencement of the litigation to the Plaintiff. IDC denies each and every other allegation of Paragraph 7.

8. IDC responds to the allegations of Paragraph 8 by stating that the pleadings in the litigation speak for themselves and by denying each and every other allegation of Paragraph 8.

9. IDC responds to the allegations of Paragraph 9 by stating the document attached thereto as Exhibit E speaks for itself and by denying each and every other attribute to the document other than as set forth on Exhibit E.

10. IDC responds to the allegations of Paragraph 10 by stating the document speaks for itself.

11. IDC responds to the allegations of Paragraph 11 by stating the document speaks for itself.

12. IDC is without sufficient information and knowledge necessary to form a belief as to the truth of the allegations of Paragraph 12.

13. IDC responds to the allegations of Paragraph 13 by incorporating by reference its response to Paragraphs 1 through 12 above as if set forth filly herein.

14. IDC denies the allegations of Paragraph 14.

15. IDC responds to the allegations of Paragraph 15 by incorporating by reference as if fully set forth herein its response to Paragraphs 1 through 14 above.

16. IDC denies the allegations of Paragraph 16.

17. IDC responds to the allegations of Paragraph 17 by incorporating by reference its response to Paragraphs 1 through 14 (sic) above as if fully set forth herein.

18. IDC denies the allegations of Paragraph 18.

19. IDC denies the allegations of Paragraph 19.

20. IDC responds to the allegations of Paragraph 20 by incorporating by reference its response to Paragraphs 1 through 19 above as if fully set forth herein.

21. IDC denies the allegations of Paragraph 21.

<u>First Affirmative Defense – Failure to State a Claim Upon Which Relief Can be Granted</u>

The Plaintiff fails to state a claim upon which relief can be granted.

<u>Second Affirmative Defense – Waiver</u>

The claims of the Plaintiff are barred by the Doctrine of Waiver.

<u>Third Affirmative Defense – Estoppel</u>

The claims of the Plaintiff are barred by the Doctrine of Estoppel.

<u>Fourth Affirmative Defense – Loss Not Caused by Action Alleged</u>

The claims of the Plaintiff are barred by reason of the fact that the acts alleged by the Plaintiff were not the cause of the loss suffered by the Plaintiff.

<u>Fifth Affirmative Defense – Setoff</u>

The claims of the Plaintiff should be setoff from the claims of the Defendant against the Plaintiff.

<u>Sixth Affirmative Defense – Unclean Hand</u>

The claims of the Plaintiff are barred by the Doctrine of Unclean Hand.

Seventh Affirmative Defense – Lack of Intent

The claims of the Plaintiff are barred by reason of IDC's lack of intent.

Wherefore, the Defendant IDC Properties, Inc. prays that the Court dismiss the Complaint against it and award it costs, attorney's fees and such other and further relief as the Court may deem just.

**DEFENDANT, IDC PROPERTIES, INC., DEMANDS TRIAL BY JURY ON ALL CLAIMS OF THE PLAINTIFF.**

FIRST AMENDED COUNTERCLAIM
AND DEMAND FOR TRIAL BY JURY

For its First Amended Counterclaim in this proceeding, the Defendant and Plaintiff in Counterclaim IDC Properties, Inc. ("IDC") states the following:

1. IDC is a Rhode Island corporation having a usual place of business at Newport, Rhode Island.

2. Defendant in Counterclaim, Commonwealth Land Title Insurance Company ("Commonwealth"), is, upon information and belief, a Pennsylvania corporation having a usual place of business in Rhode Island and is the Plaintiff in the Complaint in this action.

3. Commonwealth issued to, and for the benefit of, IDC an insurance policy identified as Commonwealth Policy No. 228716, effective as of January 13, 1998 and amended by an endorsement effective February 11, 1999 (the "Policy").

4. IDC is the insured under that Policy. The Policy insures the interests of IDC in fee simple for the property defined in the Policy and its endorsement as Parcel 1, Parcel 2, Parcel 3, Parcel 4, and Parcel 5.

5. On or about August 21,2001, Commonwealth commenced this action seeking a declaration that it was not liable to IDC for payment under the terms of the Policy. On and after

August 21,2001, Commonwealth has maintained the position that it is not obligated to make payment under the Policy by reason of the acts alleged in the Complaint.

6. On April 8,2005, the Rhode Island Supreme Court issued a decision determining that IDC, and its predecessors in interest, on and after January 13, 1998 never held valid title to the parcels insured by the Policy as Parcels 1, Parcel 4 and Parcel 5.

7. IDC is entitled to payment under the terms of the Policy. The decision of the Rhode Island Supreme Court dated April 8, 2005 conclusively determines that IDC has been divested of title in fee simple to Parcel 1, Parcel 4 and Parcel 5 which interests were insured by Commonwealth in the amount of $12 million.

8. The value of the property exceeds the amount of the insurance as defined in the Policy. IDC has made demand for payment.

9. In accordance with the terms of the Policy, IDC has taken any and all other steps necessary to cause payment to issue.

COUNT I
<u>Breach of Insurance Contract</u>

10. IDC incorporates by reference and realleges herein Paragraphs 1 through 9 above.

11. Commonwealth has breached its contract of insurance by failure to make payment under the terms and in accordance with the terms of the Policy.

12. IDC has suffered damages as a result of the breach by Commonwealth and it is entitled to payment under the terms of the Policy.

COUNT II
<u>Bad Faith</u>

13. IDC realleges and incorporates by reference herein Paragraphs 1 through 12 above.

14. Commonwealth's actions in failing to make payment under the terms of the Policy on and after April 8,2005, and by seeking to interpose as a defense its alleged lack of awareness of alleged disputes concerning the efficacy of the Third, Fourth and Fifth Amendments to the GIS master condominium declaration, all as more particularly set forth above, constitute acts of bad faith.

15. On May 29, 1999, the condominium associations of America Condominium, Capella South Condominium and Harbor House Condominium, (collectively the "Condominium Associations") commenced an action against IDC challenging the effectiveness of the Third, Fourth and Fifth Amendments to the GIS condominium master declaration. (the "State Court Litigation").

16. On June 13,2001 the Rhode Island Superior Court in and for the County of Newport (the "Superior Court") entered a judgment on the parties' cross motions for partial summary judgment determining that the Third, Fourth and Fifth Amendments were null and void by reason, amongst other things, of the failure to solicit the votes of the individual condominium unit owners. The Superior Court entered an Order declaring the amendments null and void, declaring IDC's "right to develop Goat Island" as "expired" and declaring that the Master Association was without right to act in behalf of the "unit owners." Both IDC and the Condominium Associations pursued cross appeals to the Rhode Island Supreme Court seeking to determine the status of the title to the South, West and North Units.

17. On August 24,2001, the Plaintiff here, Commonwealth, commenced this action for a declaratory judgment. The gravamen of the Plaintiffs complaint is that IDC had not informed it about a dispute with the Condominium Associations which implicated the efficacy of the Third, Fourth and Fifth Amendments.

18. On March 23,2004, the Rhode Island Supreme Court issued a 51 page opinion in the State Court Litigation making new determinations about the ownership of the Property.

19. The Supreme Court subsequently granted the Defendant's petition for re-argument and, on April 8,2005, issued a second opinion. The Supreme Court, determined, quite apart from the dispute over the Third, Fourth and Fifth Amendments that the original creation of the North, West, South Units was not in compliance with the Rhode Island Condominium Act and that those units never came into existence and IDC, and its predecessors, never held title to the units at any time.

20. Despite these findings, Commonwealth has continued to refuse to make payment under the Policy.

21. IDC has been damaged by the bad faith of Commonwealth and by its failure to make payment under the Policy.

COUNT III
Declaratory Judgment

22. IDC incorporates by reference and realleges herein Paragraph 1 through 21 above.

23. IDC seeks a declaration in accordance with 28 U.S.C. §1332 that Commonwealth is obligated to make payment under the terms of the Policy.

**EXHIBIT A**

Wherefore, IDC Properties, Inc. demands judgment against Commonwealth as follows:

1. On Count I, that the Court determine the damages suffered by IDC, enter judgment in that amount, plus interest, costs and attorney's fees;
2. On Count II, that the Court determine the damages suffered by IDC, enter judgment in that amount, plus interest, costs and attorney's fees;
3. On Count III, that the Court issue an order declaring the Commonwealth is liable to IDC for payment under the terms of the Policy; and
4. That the Court grant such other and further relief as is just.

**PLAINTIFF IN COUNTERCLAIM, IDC PROPERTIES, INC. ,DEMANDS TRIAL BY JURY ON ALL CLAIMS.**

IDC PROPERTIES, INC., Defendant

By its attorneys,

W. Mark Russo (#3937)
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

Of Counsel:

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
**Gordon Haley LLP**
101 Federal Street
Boston, MA 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: October 31,2005

**EXHIBIT A**

**CERTIFICATION**

I hereby certify that on this **31st** day of October, 2005, I served a true and accurate copy of the foregoing upon the following via first-class, postage prepaid mail.

Steven E. Snow, Esq.
**Partridge Snow & Hahn**
180 South Main Street
Providence, RI 02903-7120

______________________________