# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY<br>Plaintiff,<br><br>v.<br><br>IDC PROPERTIES, INC.<br>Defendant. | C.A. No. 01-400 T |

## PLAINTIFF'S MOTION TO (1) SEVER THIRD PARTY CLAIM AND (2) SEVER AND STAY BAD FAITH CLAIM

Plaintiff Commonwealth Title Insurance Company moves for an order (1) pursuant to Fed. R. Civ. P. 14(a), severing the third-party claim asserted by defendant IDC Properties, Inc. against Edwards Angell Palmer & Dodge, LLP, and (2) severing IDC's first-party bad faith claim. The grounds for the motion are set out in the accompanying memorandum of law.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (#1774)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: April 6, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFF'S MOTION TO (1) SEVER THIRD-PARTY CLAIM AND (2) SEVER AND STAY BAD FAITH CLAIM was mailed, postage prepaid, on this 6th day of April, 2006 to:

W. Mark Russo, Esq.
Christopher M. Mulhearn, Esq.
Ferrucci Russo P.C.
55 Pine Street, 4th Floor
Providence, RI 02903

Peter J. Haley, Esq.
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

Deming E. Sherman, Esq.
Edwards Angell Palmer & Dodge LLP
Suite 2800
One Financial Plaza
Providence, RI 02903-2499

849708_1/6052-3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY<br>Plaintiff,<br><br>v.<br><br>IDC PROPERTIES, INC.<br>Defendant. | C.A. No. 01-400 T |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO (1) SEVER THIRD PARTY CLAIM AND (2) SEVER AND STAY BAD FAITH CLAIM

Plaintiff Commonwealth Title Insurance Company ("Commonwealth") has moved pursuant to Fed. R. Civ. P. 14(a) for an order severing the third-party claim asserted by defendant IDC Properties, Inc. ("IDC") against Edwards Angell Palmer & Dodge, LLP ("EAPD"). Severance is proper because trying the core insurance coverage dispute between Commonwealth and IDC together with IDC's third-party claims against EAPD will vastly expand and complicate the issues at trial. Furthermore, in the event that it is determined that coverage exists, the third-party claims will be moot. Therefore, severing the third-party claims will permit the core dispute to proceed to trial now and will avoid wasting time and resources on issues that may never need to be resolved.

Commonwealth also moves to sever IDC's first-party bad faith claim. Under Rhode Island law, a bad faith claim is not ripe until there has been a determination that the insurer breached the contract with the insured. IDC's bad faith claim is premised on a finding that coverage exists. The bad faith claim should be severed and stayed until after the core coverage dispute, pending since 2001, has been resolved.

## I. **FACTUAL BACKGROUND**

In late 1997, Timothy More, formerly a partner of EAPD, approached Commonwealth on behalf of his client IDC. IDC was preparing to build a banquet facility known as the Regatta Club on undeveloped land within the Goat Island condominium in Newport, Rhode Island. IDC induced Commonwealth to issue a policy insuring IDC's development rights (already insured for $10 million by Chicago Title) and its fee simple interest in the so-called North Development Unit[1] by concealing that claims adverse to IDC's rights had been asserted by a group of Goat Island condominium owners. Indeed, IDC signed a tolling agreement with the condominium owners just eight days before Commonwealth issued its policy. The tolling agreement covered all claims "concerning the creation of, amendments to, and operation of the condominium property." *America Condominium Ass'n v. IDC, Inc.*, 844 A.2d 117, 134 (R.I. 2004) *("America Condominium I")*.[2] IDC did not disclose the tolling agreement to Commonwealth.

The condominium owners filed suit against IDC on May 29, 1999. Among the issues raised by their complaint was "the status of IDC's 'title' to the units it owns." IDC Original Counterclaim, ¶ 5; *see also America Condominium I*, 844 A.2d at 125 (condominium owners' complaint "contended that when defendants failed to exercise their development rights

---

[1] Also referred to as the Reserved Area.

[2] As stated by the Court:

> The record reflects that on January 5, 1998, a tolling agreement was executed. The accord provided that, for purposes of the agreement, any legal action filed by the parties on or before June 30, 1998, concerning the creation of, amendments to, and operation of the condominium property would be deemed to "have been commenced, filed and served, for purposes of statute of limitations, laches, waiver, estoppel or similar defenses, on December 1, 1997." This tolling agreement was extended three times thereafter. The final document indicated that any action filed on or before May 31, 1999, would be deemed to have been filed on December 1, 1997. Significantly, in 1998, well after the execution of the tolling agreement, IDC constructed a function center known as the Newport Regatta Club on the North Development Unit/Reserved Area.

*America Condominium I,* 844 A.2d at 125.

on or before December 31, 1994, their reserved interest in the undeveloped units ceased to exist, thus implying that fee simple title then vested in plaintiffs"). In 2001 the condominium owners won a judgment in Rhode Island Superior Court holding that the development rights insured by Commonwealth were void. Both sides appealed. On appeal, the plaintiffs contended "that the partial judgment, as entered, did not accurately reflect the decision of the court because it did not state that fee simple title was now vested in plaintiffs." *America Condominium I*, 844 A.2d at 126.

After the Superior Court entered its judgment, Commonwealth filed a complaint for declaratory relief against IDC. The complaint alleges that IDC is not entitled to coverage under the Commonwealth title policy because of IDC's failure to disclose when it applied for coverage that claims had been made adverse to IDC's rights. IDC counterclaimed for a declaration that coverage exists. The parties completed discovery, and a trial notice was issued on January 14, 2003. Commonwealth submitted its pre-trial memorandum. IDC subsequently moved for a stay of the trial, which was granted pending the outcome of the cross-appeals of the Superior Court's order to the Rhode Island Supreme Court.

The Rhode Island Supreme Court eventually issued two opinions in that appeal. The first opinion confirmed that IDC was on notice of the claims against its rights at the time it approached Commonwealth for title coverage, and held that "[d]espite the fact that the tolling agreement specifically acknowledged and contemplated the possibility that plaintiffs might file the instant civil suit, and while the agreement was still in full force and effect, defendants knowingly invested substantial sums of money in the Reserved Area by constructing the Newport Regatta Club in 1998." *America Condominium I*, 844 A.2d at 134. The opinion further held that title to the North Development Unit/Reserved Area belonged to the individual unit owners. *Id.* at 133. IDC petitioned successfully for reargument, and the Rhode Island Supreme

Court issued a second opinion in April, 2005. *America Condominium Ass'n v. IDC, Inc.*, 870 A.2d 434 ("*America Condominium II*"). The second opinion concluded that IDC had never validly created certain development units on Goat Island, including the North Development Unit, and that those units are common elements of the Goat Island condominium. *Id.* at 442.

## II. ARGUMENT

### A. The Third-Party Claim Against EAPD Should Be Severed.

Fed. R. Civ. P. 14(a) provides that "[a]ny party may move to strike the third-party claim, or for its severance or separate trial." "When considering a request to sever the impleader claim and for its separate trial, the court typically is concerned with the effect the additional parties and claims will have on the main action – in particular, whether continued joinder will serve to complicate the litigation unduly or will prejudice the other parties in any substantial way." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1460 (1990). *See Federal Deposit Insurance Corp. v. diStefano*, 839 F. Supp. 110, 120 (D.R.I. 1993) (motion to add third-party claims "should be denied if the claims, when inserted into the case, will delay or disadvantage the existing action or if the third-party claims obviously lack merit.").

Continued joinder of IDC's third-party claims against EAPD with the core declaratory judgment action between Commonwealth and IDC will disadvantage a resolution of the core coverage issue in several ways. First, there will be a long delay in deciding coverage claims that are already five years old, and that were noticed for trial three years ago. EAPD may file preliminary motions, on statute of limitations and potentially other grounds, which will prolong the case. Even if no preliminary motions are filed, or they are unsuccessful, there will be additional fact discovery, expert discovery on the standard of care (for the legal malpractice claim), and possibly further motions. Lengthy delays are inevitable.

Second, if the third-party claims against EAPD are tried together with the coverage issue, it will unduly complicate the trial. IDC has asserted third-party claims for indemnification, breach of contract, legal malpractice and breach of fiduciary duty. All of these claims involve EAPD's equitable and legal duties to its client, which need not be decided to determine if there is coverage.[3] Furthermore, the third-party claims are jury claims, while the coverage claim is non-jury. Joining jury and non-jury claims in one action will further complicate the case.

Third, the third-party claims against EAPD will be moot if the Court determines that coverage exists. It would be a waste of the Court's and the parties' resources to proceed with these claims before the coverage issue has been resolved.

The Rhode Island Supreme Court has already determined that IDC was on notice of the challenge to its rights, and proceeded at its own risk in developing the Regatta Club:

> In reviewing defendants' assertions that plaintiffs should not benefit from defendants' development of the Newport Regatta Club, we observe that *defendants commenced such development with full knowledge of plaintiffs' claims* and after they voluntarily entered into the tolling agreement. Considering that they developed the Reserved Area at a time when they were on notice that their right to do so was in dispute, we conclude that *they constructed the parcel at their peril* and cannot now contend that equity should prevent plaintiffs from prevailing because of their expenditures.

*America Condominium I*, 844 A.2d at 135 (emphasis added). Commonwealth contends that it is entitled to a declaration that IDC, knowing of its peril, could not shift that peril to Commonwealth by failing to disclose it. Such a declaration, if granted, will not implicate IDC's claims that EAPD committed legal malpractice or should indemnify IDC for any loss.

---

[3] To the extent that there are any overlapping factual issues, EAPD could be permitted to participate in the coverage phase of the case in connection with those issues.

**B. <u>The First-Party Bad Faith Claim Should Be Severed And Stayed.</u>**

IDC's bad faith claim should be severed and stayed. The Rhode Island Supreme Court has held that it is not bad faith for an insurer to assert its legal rights under an insurance policy. *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010 (R.I. 2002) (an insurer has "the right to debate a claim that is fairly debatable."). To show bad faith, a "plaintiff must demonstrate an absence of a reasonable basis in law or fact for denying the claim or an intentional or reckless failure to properly investigate the claim and subject the result to cognitive evaluation." *Id.* at 1012. Therefore, a bad faith claim must be severed and no action in bad faith can lie unless and until the insured has proven a breach of the insurance contract. *Id.* at 1014 (citing *Bartlett v. John Hancock Mutual Life Ins. Co.*, 538 A.2d 997, 1000 (R.I. 1988)).

IDC has not proven a breach of contract. Indeed, it has never even filed a proof of loss, the first step in making a formal claim against the policy. Complaint Ex. C, ¶ 5 ("In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage."). In the event that the issue of coverage is resolved on favor of Commonwealth, IDC's bad faith claim will be moot. Entering a stay will avoid wasting resources on a claim that is not now, and may never be, truly ripe for determination.

COMMONWEALTH LAND TITLE
INSURANCE COMPANY

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (#1774)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: April 6, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO (1) SEVER THIRD-PARTY CLAIM AND (2) SEVER AND STAY BAD FAITH CLAIM was mailed, postage prepaid, on this 6th day of April, 2006 to:

W. Mark Russo, Esq.
Christopher M. Mulhearn, Esq.
Ferrucci Russo P.C.
55 Pine Street, 4th Floor
Providence, RI 02903

Peter J. Haley, Esq.
Gordon Haley LLP
101 Federal Street
Boston, MA 02110

Deming E. Sherman, Esq.
Edwards Angell Palmer & Dodge LLP
Suite 2800
One Financial Plaza
Providence, RI 02903-2499

846862_1/6052-3