**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
            Plaintiff,
      v.                                C.A. No. 01-400T
IDC PROPERTIES, INC.,
            Defendant.
------------------------
IDC PROPERTIES, INC.,
    Third-Party Plaintiff,
      v.
TIMOTHY MORE and EDWARDS
ANGELL PALMER & DODGE LLP,
    Third-Party Defendants.

**MEMORANDUM AND ORDER**

ERNEST C. TORRES, Senior U.S. District Judge.

**Introduction**

Commonwealth Land Title Insurance Company ("Commonwealth") brought this action seeking a declaratory judgment that a title insurance policy issued by Commonwealth to IDC Properties, Inc. ("IDC") affords no coverage to IDC's loss of development rights in portions of the Goat Island South Condominium complex in Newport, RI.  IDC has filed counterclaims against Commonwealth for bad faith denial of coverage.  IDC also has filed third party claims against Edwards & Angell, LLP (now Edwards Angell Palmer & Dodge) ("E&A") and Timothy More, the attorneys who represented IDC in developing the Goat Island South Condominium and obtaining the title insurance policy from Commonwealth.

The case is presently before this Court for consideration of

1

Commonwealth's motion to sever the third party claim in which E&A and More join. Because I find that there are factual and legal issues common to both Commonwealth's claims and the third party claims and that severing the claims may create a risk of inconsistent judgments, the motion to sever the third party claim is denied.[1]

## Background

Most of the relevant facts are set forth in _America Condominium Ass'n, Inc. v. IDC, Inc._, 844 A.2d 117, 122 (R.I. 2004) ("_America Condominium I_") _decision clarified on reargument_, 870 A.2d 434 (R.I. Apr. 8, 2005) and may be summarized as follows. IDC owned approximately 23 acres of land on Goat Island which it planned to develop in stages. A Master Condominium Declaration ("Master Declaration") divided the property into several parcels on which residential condominium buildings were to be constructed. By March of 1998, condominium buildings had been constructed on three of the parcels and some of the individual units had been sold. The three remaining parcels (South, West, and North) still were undeveloped and the Master Declaration was amended to give Globe Manufacturing Co., IDC's predecessor, development rights on the South and West parcels as well as the right to convert the North parcel into a master common element. _America Condominium I_, 844

---

[1] The motion to sever and stay the bad faith claim previously was granted.

2

A.2d at 120-21.  The Master Declaration agreement provided that the development rights would expire on December 31, 1994.  <u>Id.</u> at 121.

In 1994, Globe, and later IDC, sought to extend the December 1994 deadline by amending the Master Declaration.  The amendments purportedly were approved at special meetings attended by Globe/IDC and representatives of the unit owners.  <u>Id.</u> at 122.  Commonwealth alleges that, in December of 1997, associations of unit owners disputed the validity of the amendments on the ground that they had not been unanimously approved and that the associations threatened to bring suit.

In January 1998, IDC and the associations entered into a tolling agreement that extended the statute of limitations on the associations' claims.  At approximately the same time, IDC applied for and obtained the Commonwealth title policy that is the subject of this litigation.  IDC then proceeded to construct the Newport Regatta Club on the North parcel.  <u>America Condominium I</u>, 844 A.2d at 134.

Commonwealth's policy insures both IDC's title and its development rights in the property.  However, it includes a section entitled "Exclusions From Coverage" which provides:

> The following matters are expressly excluded from the coverage of this Policy and the Company will not pay loss or damage, cost, attorneys' fees or expenses, which arise by reason of: . . . adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, nor recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the

Company by the insured claimant prior to the date the
insured claimant became an insured under this Policy.
(Pl.'s Compl. ¶ 10.)

On May 29, 1999, the associations sued IDC in state court and
in June 2001, the Rhode Island Superior Court ruled that IDC's
development rights in a portion of the insured property had
expired.  That prompted Commonwealth to bring this action seeking
a declaration that IDC's development rights are excluded from
coverage because IDC failed to disclose the claims of the unit
owners.

While this action was pending, the Rhode Island Supreme Court
issued two opinions affirming the Superior Court judgment against
IDC.  In the first opinion, the Supreme Court held that the
amendments extending the deadline for the exercise of IDC's
development rights were void because the unit owners did not
unanimously consent and that title to the property on which the
development rights had expired was vested in the unit owners.
American Condominium I, 844 A.2d at 130, 132-33.  After reargument,
the Supreme Court issued a second opinion affirming the Superior
Court judgment but, this time, on the ground that because the
parcels in question always were common elements, "title rested with
the unit owners in common ownership from the creation of the
condominium."  America Condominium Ass'n Inc. v. IDC, Inc., 870
A.2d 434, 443 (R.I. 2005) ("America Condominium II").

IDC, then asserted its third party claims against its

4

attorneys alleging that any lack of coverage would be attributable to the attorneys' negligent failure to disclose the relevant facts regarding the challenge to its development rights.

**Analysis**

I.  Standard for Severance of Claims

A motion to sever a claim and to try it separately is governed by Federal Rule of Civil Procedure 42(b), which provides:

> **(b)**  **Separate Trials.**  The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or third party claim, . . . always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

In deciding whether to sever claims and try them separately, a court should consider a number of factors, including: (1) whether separate trials will help to simplify the issues and avoid confusion; (2) whether separate trials will result in duplication of evidence; (3) whether separate trials will create a risk of inconsistent verdicts; (4) whether separate trials will result in an efficient use of judicial resources; (5) whether separate trials will expedite or delay the proceedings; and (6) the effect on the parties' rights to a jury trial. See Thorndike ex rel. v. DaimlerChrysler Corp., 220 F.R.D. 6, 7-8 (D. Me. 2004); O'Dell v. Hercules, Inc., 904 F.2d 1194, 1202 (8th Cir. 1990) ("In exercising discretion [under Rule 42(b)], district courts should consider the preservation of constitutional rights, clarity, judicial economy,

the likelihood of inconsistent results and possibilities for confusion."); <u>Stanley v. Bray Terminals, Inc.</u>, 197 F.R.D. 224, 230 (N.D.N.Y. 2000) (when considering whether claims should be tried separately, court should consider whether the issues "are (1) significantly different from one another; (2) triable by jury or the court; (3) have a different discovery posture [sic] (4) require the testimony of different witnesses and documentary proof; and (5) whether prejudice will result if severance is not granted."); <u>Webb v. Hyman</u>, 861 F. Supp. 1094, 1120 (D.D.C. 1994) (quoting 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2388 (1971))("If a single issue could be dispositive of the case, and resolution of it might make it unnecessary to try the other issues, separate trial of that issue may be desirable to save the time of the court and reduce the expense of the parties.").

Here, Commonwealth claims that there is no coverage because IDC failed to disclose the challenge to its development rights and the existence of the tolling agreement when it applied for the title policy.  IDC claims that it made all of the required disclosures, or, alternatively, that any failure to disclose was due to negligence by its attorneys who were hired to obtain the policy.

The dominant factual question underlying all of these claims is: what disclosures were or were not made to Commonwealth? Litigating the claims separately would require that the same

evidence be presented twice.   Moreover it would create a risk of inconsistent verdicts.   In the trial of Commonwealth's claim against IDC, it might be determined that there is no coverage because E&A failed to disclose all relevant information in its possession to Commonwealth.   Then, in the trial of IDC's claims against E&A, it might be decided that IDC cannot recover from E&A because E&A did disclose the relevant information to Commonwealth.

The duplication of effort and risk of inconsistent verdicts created by severance greatly outweighs any simplification of issues that may result from trying them separately and, thereby, eliminating evidence from the first trial regarding what was said between IDC and E&A.

### Conclusion

For all of the foregoing reasons, Commonwealth's Motion to Sever the Third Party Claim is hereby denied.

IT IS SO ORDERED.


Ernest C. Torres
Sr. United States District Judge

Date: 4/3/07

7