**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| COMMONWEALTH LAND TITLE INS. CO.,<br>Plaintiff,<br>v.<br>IDC PROPERTIES, INC.,<br>Defendant and Third Party Plaintiff,<br>v.<br>TIMOTHY MORE and EDWARDS ANGELL PALMER & DODGE LLP,<br>Third Party Defendants. | Case No. 01-400-T |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF THIRD PARTY DEFENDANTS EDWARDS ANGELL PALMER & DODGE LLP AND TIMOTHY MORE**

Pursuant to Fed. R. Civ. P. 56(c) and Local Rule Cv 56, third party defendants Edwards Angell Palmer & Dodge LLP formerly Edwards & Angell LLP ("Edwards & Angell") and Timothy More ("More") (collectively, the "Third Party Defendants") hereby submit the following Statement of Undisputed Material Facts in support of their Motion for Summary Judgment filed herewith.[1]

1. Goat Island South consists of various parcels of land in Newport, Rhode Island, originally including three residential condominium buildings and three parcels of undeveloped land, the West Unit (also called Development Unit #1), the South Unit (also called the Individual

[1] The Third Party Defendants do not dispute the facts set forth herein for purposes of this motion only and reserve the right to dispute these facts later in this litigation.

Unit), and the North Unit (also called the Reserved Area). (Third Party Complaint at ¶ 4 (Docket No. 33); *America Condo. Assoc., Inc. v. IDC, Inc.*, 844 A.2d 117, 120 (R.I. 2004).)

2. In or around 1992, IDC Properties, Inc. ("IDC") acquired, among other things, the development rights to the West Unit, the South Unit, and the North Unit at Goat Island South. (Exhibit 1, 9/26/02 Deposition of Thomas Roos ("2002 Roos Dep. Tr.") at 27:2-8; Third Party Complaint at ¶ 4.)

3. In 1994, Thomas Roos ("Roos") purchased IDC's stock. (Roos Dep. Tr. at 7:14-22.)

4. In late 1994, Edwards & Angell and Mr. More, then a partner at Edwards & Angell, began representing IDC in connection with Goat Island South. (Exhibit 2, 12/20/02 Deposition of Timothy More ("2002 More Dep. Tr.") at 13:11-14.)

5. In or around December 1997, Mr. Roos requested that Mr. More obtain approximately $5 million in title insurance on the North Unit. (Exhibit 1, 2002 Roos Dep. Tr. at 42:8-18, 44:2-8; Third Party Complaint at ¶ 10.)

6. On or about December 4, 1997, Mr. More wrote to Michael Mellion at Commonwealth Title Insurance Company ("Commonwealth") and informed him that IDC wanted to purchase approximately $5 million in title insurance on the North Unit and wanted to obtain insurance for the development rights. (Complaint, Exhibits A & B (Docket No. 1).)

7. Mr. More and Mr. Mellion had subsequent discussions concerning IDC's request for title insurance. (Exhibit 4, 2006 More Dep. Tr. at 17:8-21; Exhibit 3, 1/9/03 Deposition of Michael Mellion ("Mellion Dep. Tr.") at 22:3-23:8.)

8. On or about January 13, 1998, Commonwealth issued a title insurance policy, Policy No. 228716, to IDC in the amount of $7 million insuring title in the North Unit and rights to construct improvements. (Complaint, Exhibit C; Third Party Complaint at ¶ 10.)

9. In late 1998, IDC requested Mr. More to obtain additional title insurance on the North Unit and to add the South Unit and the West Unit to the policy. (Exhibit 1, 2002 Roos Dep. Tr. at 66:3-9; Exhibit 4, 2006 More Dep. Tr. at 49:3-18; Third Party Complaint at ¶ 11.)

10. On or about December 3, 1998, Mr. More wrote a letter to Mr. Mellion requesting an increase in coverage from $7 million to $12 million and requesting to add the South Unit and the West Unit of Goat Island South to the policy. (Exhibit 5, 12/3/98 Letter from Mr. More to Mr. Mellion.)

11. Mr. More and Mr. Mellion had subsequent conversations concerning IDC's request for additional coverage. (Exhibit 3, 2003 Mellion Dep. Tr. at 42:12-43:16; Exhibit 4, 2006 More Dep. Tr. at 16:16-17:4.)

12. On or about February 7, 1999, Commonwealth increased its coverage under IDC's Policy No. 228716 to $12 million and included the South Unit and the West Unit. (Complaint, Exhibit D; Third Party Complaint at ¶ 11.)

13. On or about May 29, 1999, three condominium associations at Goat Island South commenced an action against IDC in Rhode Island Superior Court under the caption *America Condominium Assoc., Inc., et al. v. IDC, Inc.*, Civ. Action No. 2001-469. (Answer and Counterclaims at ¶ 5 (Docket No. 4); *America Condo. Assoc., Inc.*, 844 A.2d at 125.) The condominium associations challenged the effectiveness of the Third, Fourth and Fifth Amendments to the Condominium Declaration. (Answer and Counterclaims at ¶ 5; *America Condo. Assoc., Inc.*, 844 A.2d at 125.) Among other things, the plaintiffs alleged that IDC had

improperly extended its development rights and that its development rights had expired. (Answer and Counterclaims at ¶ 5; *America Condo. Assoc., Inc.*, 844 A.2d at 125.) The law firm of Blish & Cavanagh LLP represented IDC in connection with that litigation. (Exhibit 1, 2002 Roos Dep. Tr. at 77:21-23.)

14. On or about August 24, 2001, Commonwealth filed the instant declaratory judgment action against IDC under the caption *Commonwealth Land Title Ins. Co. v. IDC Properties, Inc.*; Civ. A. No. 01-400-T ("this Action"). (Complaint at p. 9.)

15. The law firms of Blish & Cavanagh LLP, Ferrucci Russo, P.C., and Gordon Haley LLP have represented IDC in this Action. (*See* Docket.)

16. In its Complaint, Commonwealth alleged that, in obtaining title insurance from Commonwealth, IDC acted through its agent and legal counsel, Mr. More. (Complaint at ¶ 4.) Commonwealth also alleged that Mr. More and IDC were aware of the plans by three condominium associations to file challenges to IDC's development rights and that Mr. More had negotiated a tolling agreement with the condominium associations in December 1997. (*Id*. at ¶ 11(g).) Commonwealth further alleged that neither IDC nor Mr. More informed it either of a potential legal challenge by the condominium associations or the existence of the tolling agreement when it issued its title insurance policies in January 1998 and February 1999. (*Id*. at ¶ 12.)

17. On or about September 28, 2001, IDC filed an Answer and Counterclaims in this Action. (Answer and Counterclaims at p. 7.) The Counterclaims did not allege any cause of action against Edwards & Angell or Mr. More. (*See generally* Answer and Counterclaims.)

18. On or about March 27, 2006, IDC filed a Third Party Complaint against Edwards & Angell and Mr. More in this Action. (Third Party Complaint at p. 6.)

19. The Third Party Complaint alleges four causes of action against the third party defendants: (1) legal malpractice; (2) breach of contract; (3) breach of fiduciary duty; and (4) indemnification. (Third Party Complaint at ¶¶ 16-33.) Each of IDC's claims is based on alleged conduct of Edwards & Angell and Mr. More in procuring title insurance from Commonwealth in January 1998 and February 1999. (*Id*. at ¶¶ 10-11.)

20. The four causes of action in the Third Party Complaint are as follows:

a) Count I, labeled "indemnity," alleges that "[i]f the court determines that IDC is not entitled to coverage under the Policy because of the conduct of More and Edwards & Angell in procuring the Policy, IDC is entitled to be indemnified and held harmless by More and Edwards & Angell by reason of their wrongful conduct." (*Id*. at ¶ 17.)

b) Count II (breach of fiduciary duty) is based on IDC's purported reliance on the Third-Party Defendants to procure title insurance on IDC's behalf and alleges that its failure to do so properly is a breach of fiduciary duty. (*Id*. at ¶¶ 20-23.)

c) Count III (breach of contract) is also based on the Third Party Defendants' role in procuring title insurance for IDC's property in 1998 and 1999 and their alleged failure to "make all appropriate disclosures and take all necessary steps" required to issue valid title insurance. (*Id.* at ¶¶ 25-28.)

d) Count IV (negligence – legal malpractice) alleges that the Third Party Defendants acted as IDC's counsel in procuring title insurance for IDC's property in 1998 and 1999 and that they failed to exercise reasonable care and diligence in providing their services. (*Id*. at ¶¶ 30-33.)

21. IDC has not alleged any negligence or improper actions by any of the Third Party Defendants after February 1999. (Third Party Complaint at ¶¶ 4-15.)

Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP
and TIMOTHY MORE

By their attorneys,

/s/ Deming E. Sherman
Deming E. Sherman (#1138)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

Harold Hestnes (admitted *pro hac vice*)
John G. Fabiano (admitted pro *hac vice*)
Benjamin M. Stern (admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
(617) 526-5000 (fax)

Dated: May 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of May, 2007, a copy of the within Statement of Undisputed Material Facts was sent by electronic means (ECF) to the following counsel of record:

Steven E. Snow, Esq.
ses@psh.com

Robert K. Taylor, Esq.
rkt@psh.com

Stephen F. Gordon, Esq.
sgordon@gordonhaley.com

Peter J. Haley, Esq.
haley@gordonhaley.com

W. Mark Russo, Esq.
mrusso@frlawri.com

Christopher M. Mulhearn, Esq.
cmulhearn@frlawri.com

and mailed to the following counsel of record:

Harold Hestnes, Esq.
John G. Fabiano, Esq.
Benjamin M. Stern, Esq.
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109

/s/ Deming E. Sherman
Deming E. Sherman