UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COMMONWEALTH LAND TITLE INSURANCE COMPANY,

Plaintiff,

v.

IDC PROPERTIES, INC.,
Defendant and Third Party Plaintiff

v.

TIMOTHY MORE, and
EDWARDS ANGELL PALMER DODGE LLP

Third Party Defendants.

Civil Action No. 01-400 T

OPPOSITION OF IDC PROPERTIES, INC. TO COMMONWEALTH LAND TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

IDC Properties, Inc. ("IDC"), the Defendant and Third Party Plaintiff in the above-caption civil action, opposes Commonwealth Land Title Insurance Company's Motion for Summary Judgment. In support of this Opposition, IDC relies upon the following documents filed contemporaneously herewith:

1. Response to Statement of Undisputed Material Facts of IDC Properties, Inc. in Opposition to Plaintiff's Motion for Summary Judgment;

2. Memorandum of IDC Properties, Inc. in Opposition to Plaintiff's Motion for Summary Judgment;

3. Affidavit of Thomas Roos in Opposition to Motions of Plaintiff and Third Party Defendant for Summary Judgment; and

4. Affidavit of Counsel Appending Exhibits in Opposition to Motions of Plaintiff and Third Party Defendant for Summary Judgment.

Wherefore, IDC Properties, Inc. requests that the Court deny Commonwealth Land Title Insurance Company's Motion for Summary Judgment and grant such other and further relief as is just.

IDC PROPERTIES, INC., Defendant

By its attorneys,

/s/ W. Mark Russo_________________
W. Mark Russo #3937
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
*Pro Hac Vice*
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: June 29, 2007

P:\Clients\Roos\Newport\Plead\Opposition to Summary Judgment Commonwealth.doc

**Certification**

I hereby certify that on this 29th day of June, 2007, I served a true and accurate copy of the foregoing upon the following via e-mail.

**Steven E. Snow, Esq. -** ses@psh.coml; tlc@psh.com

**Deming E. Sherman, Esq.**
dsherman@eapdlaw.com

**Peter J. Haley, Esq.** haley@gordonhaley.com; Haggerty@gordonhaley.com; notices@gordonhaley.com

**Stephen F. Gordon, Esq.**
sgordon@gordonhaley.com; haggerty@gordonhaley.com; notices@gordonhaley.com

I hereby certify that on this 29th day of June, 2007, I served a true and accurate copy of the foregoing upon the following via first-class mail.

Beth E. Bookwalter, Esq.
Harold Hestnes, Esq.
**Wilmer Cutler Pickering Hale & Dorr LLP**
60 State Street
Boston, MA 02109

/s/ W. Mark Russo_________

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br>Plaintiff,<br><br>v.<br><br>IDC PROPERTIES, INC.,<br>Defendant and Third Party Plaintiff<br><br>v.<br><br>TIMOTHY MORE, and<br>EDWARDS ANGELL PALMER DODGE LLP<br><br>Third Party Defendants. | ) | Civil Action<br>No. 01-400 T |

MEMORANDUM OF IDC PROPERTIES, INC. IN OPPOSITION TO MOTION OF COMMONWEALTH LAND TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

## Introduction

The Defendant IDC Properties, Inc. ("IDC Properties") submits this memorandum in opposition to the motion of the Plaintiff Commonwealth Land Title Insurance Company ("Commonwealth") for summary judgment. Commonwealth by its motion seeks the entry of summary judgment on "all of its claims against IDC Properties." The relief sought by Commonwealth is set forth in the prayer for relief on page 9 of the Complaint For Declaratory Relief. The relief prayed for is as follows:

> WHEREFORE, Insurer demands judgment against IDC: (1) declaring that any loss or damage sustained or incurred by IDC by reason of the annulment of IDC's purported extensions of its development rights at the Goat Island Condominium, or the loss,

expiration or extinguishment of its development rights at the Goat Island Condominium, are excluded from coverage under the Owner's Title Insurance Policy, Policy No. 228716; (2) declaring that Insurer is not liable to IDC for any loss, damage, costs, attorney fees or expenses sustained or incurred by IDC by reason of the annulment of IDC's purported extension of its development rights at the Goat Island Condominium, or the loss, expiration or extinguishment of its development rights at the Goat Island Condominium; (3) declaring that Insurer is not liable to IDC for any costs, attorney fees, or expenses sustained or incurred, or expected to be sustained or incurred, by reason of IDC's defense of the Litigation; (4) for an award of costs and attorney fees for prosecuting this action; and (5) for such other and further relief that to the court seems meet and just.

The Complaint, filed in August of 2001, and unamended since that date, seeks to have the Court determine that Commonwealth is not responsible for any loss suffered under the policies by reason of the annulment of IDC Properties' development rights. IDC Properties' loss, as it turns out, is due to a flaw in the original declaration establishing the condominium in 1988 and is unrelated to the votes extending the development rights; which rights the Rhode Island Supreme Court determined never existed. Commonwealth persists in arguing that its lack of knowledge about a dispute that ultimately had no impact on title, should relieve it from the obligations it undertook to insure that title. This argument must fail as a matter of law. On summary judgment the argument is particularly inappropriate, given that there are substantial issues of material fact related to whether or not Commonwealth had knowledge of the dispute. Finally, the arguments put forth by Commonwealth seeks to impermissibly transfer its own obligations of due diligence onto the insured and its counsel.

<u>Facts</u>

IDC Properties incorporates by reference the Response And Statement Of Undisputed Material Facts Of IDC Properties, Inc. In Opposition To Plaintiff's Motion For Summary Judgment and summarizes the facts set forth therein below.

On May 29, 1999, the condominium associations of America Condominium, Capella South Condominium and Harbor House Condominium, (collectively the "Condominium Associations") commenced an action against IDC Properties, Inc. On June 13, 2001 the Rhode Island Superior Court in and for the County of Newport (the "Superior Court") entered a judgment on the parties' cross motions for partial summary judgment determining that the Third, Fourth and Fifth Amendments to the master declaration establishing the Goat Island South – a Waterfront Condominium (the "GIS condominium" were null and void by reason, amongst other things, of the failure to solicit the votes of the individual condominium unit owners. The Superior Court entered an Order declaring the amendments null and void, declaring IDC's "right to develop Goat Island" as "expired" and declaring that the Master Association was without right to act in behalf of the "unit owners." Both IDC and the Condominium Associations then pursued cross appeals to the Rhode Island Supreme Court seeking to determine the status of the title to the South, West and North Units. America Condominium Association, Inc. et al v. IDC, Inc., 844 A.2d 117 (R.I. 2004) (*America Condominium I*), decision clarified on reargument, America Condominium Association, Inc. et al v. IDC, Inc., 870 A.2d 434 (R.I. 2005) (*America Condominium II*).

On March 23, 2004, the Rhode Island Supreme Court issued a 51 page opinion in the State Court Litigation making new determinations about the ownership of the Property. The opinion included a 22 page dissent, (Flanders, J.). Id. America Condominium Association, Inc. et al v. IDC, Inc., 844 A.2d 117 (R.I. 2004) (*America Condominium I*), decision clarified on reargument, America Condominium Association, Inc. et al v. IDC, Inc., 870 A.2d 434 (R.I. 2005) (*America Condominium II*).

The Supreme Court subsequently granted the Defendant's petition for re-argument and, on April 8, 2005, issued its opinion in *America Condominium II*. In *America Condominium I* the Supreme Court affirmed the Superior Court's findings that the Third, Fourth and Fifth Amendments were null and void. Notably, there was never any challenge to the validity of the Sixth Amendment creating the North Unit. See, America Condominium I, 844 A.2d at 124 n. 12. The Supreme Court went on to determine in *America Condominium I*, however, that title to the West, South and North Units, had, as a result of the failure of the Third, Fourth and Fifth Amendments, then vested in "the individual unit owners in fee simple." Id., at 133. In *America Condominium II*, the Supreme Court reconsidered and withdrew this finding. In *America Condominium II*, the Supreme Court looked more closely at the creation of the South, West and North Units and paid particularly close attention to the assertion of IDC, that, regardless of the status of its development rights, it remained the owner of the Master Units, which consisted of the airspace over and above the land underlying the South, West and North Units. The Supreme Court concluded that

> A Unit is not simply created by describing a parcel of real estate, whether or not it be airspace only, and designating it as a unit (or a master unit) in declaration of a condominium. There must also be compliance with the[Rhode Island Condominium] Act.

America Condominium II, 870 A.2d at 442.

The Supreme Court, in *America Condominium II*, determined, quite apart from the dispute over development rights, that the original creation of the West and South Units was not in compliance with the Rhode Island Condominium Act and accordingly, "because the South and West Units were never validly created units within the meaning of the Act, they were, and remain, common elements." 870 A.2d at 440. The Supreme Court reached the same conclusion

with respect to the North Unit ("Consequently, these portions of the condominium always were, and remain common elements.") 870 A.2d at 442.

Timothy More requested title insurance from Commonwealth on behalf of IDC Properties pursuant to a letter dated December 4, 1997 addressed to Commonwealth's agent, Michael Mellion ("Mellion") [Aff. of Counsel, Exhibit I]. The letter enclosed a memorandum dated November 17, 1997 which discussed the issues surrounding the creation of the North Development Unit and the potential challenges to the amendment creating that unit. The memorandum states, at the bottom of Page 1, "In the absence of fraud, a court should find that the one year statute of limitations and/or laches bars any attack on the 1994 amendment." [Aff. of Counsel, Exhibit I].

More informed Mellion that he had also applied for title insurance with Chicago Title and that Chicago was "having concerns about issuing title insurance on the North Development Unit. (Dep. More, p. 17, l. 19-20), More later told Mellion that Chicago Title had declined to provide title insurance. (Dep. More p. 19, l. 5). More also told Mellion that there was a dispute between IDC Properties and the Condominium Association (Dep. More p. 20, l.21) and that there were "serious disagreements" with the Condominium Association over this issue (Dep. More, p. 64, l.22)

Mellion had documents authored by his own title examiner which stated that "No MLC [Municipal Lien Certificate] is possible. The city has locus located within the common areas until development occurs, the city will not distinguish as a separate plat and lot. [Aff of Counsel, Exhibit J] The title examiner's notes went on to state that "The Newport tax assessor added Development Unit # 1 and Individual Unit parcels to the Common Elements of the Goat Island South Condo in 1995. He was told by atty. William Cochran that the development rights expired

12/31/94. My view of the Condominium Documents leads me to believe that the development rights were extended at least to 12/31/99." [Aff of Counsel, Exhibit K]

More answered every question asked of him by Mellion and produced any documents that were requested (Dep. Mellion p. 20). Commonwealth had no contact with Tom Roos or anyone from anyone IDC Properties. (Dep. Mellion, p 11 l. 16 p.12, l. 2).

## Argument

I. Applicable Standard On Summary Judgment

Summary judgment is properly granted only if the movant can demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Velez-Rivera v. Agosta-Alicea, 437 F. 3d 145 (1st Cir. 2006). When determining a motion for summary judgment, the Court reviews the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor . Foraste v. Brown University, 290 F.Supp.2d 234 (D.R.I. 2003) citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002); Mesnick v. General Electric Co., 950 F.2d 816, 820 (1st Cir.1991); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990).

II. There are Genuine Issues of Material Fact Concerning the Knowledge of Commonwealth About The Disputes Concerning The Amendments

Commonwealth insured three separate rights or parcels in issuing its policy. First, it insured that IDC Properties held title in fee simple to the North Development Unit as described in metes and bounds, second, it insured the right of IDC Properties as Special Declarant to construct improvements on the North Unit pursuant to the Fifth Amendment and third, it insured the right of an Owner generally to construct improvements on the North Unit. (Exhibit B to the Complaint) In 1999, the policy was increased from $7 million to $12 million and the South and

West Units were added to the property covered. (Exhibit D to the Complaint). Commonwealth's argument that it was unaware of the disputes with the condominium associations concerning the efficacy of the amendments is belied by the very terms of the policy itself. The property which was initially insured is the North Unit, the form of title is insured in three separate forms, first in fee simple, secondly through the development rights granted by the Fifth Amendment and lastly through the inherent right of any unit owner to construct improvements in their "unit." The form of the policy mirrors exactly Tim More's alternative theories about IDC Properties' ownership. (Exhibit A to the Complaint). Commonwealth's claims that they were unaware of any disputes or issues are inconsistent with the very terms of the policies themselves.

On behalf of IDC Properties, More sent a letter to Commonwealth requesting title insurance and enclosing a memorandum dated November 17, 1997. The reference line of the memorandum states "IDC Regarding Goat Island/North Development Unit/Title Issues." (Exhibit A to the Complaint). The whole premise of the memorandum is a legal argument for the existence of valid title. The memorandum states with respect to the efficacy of the Fifth Amendment, "**Even if the amendment is invalid, there is a one year statute of limitations in the Condominium Act for challenging the validity of an amendment to a Declaration adopted by an association.**" (emphasis added) Id. At deposition, Mellion was asked

> Q. Well, for what purpose did you think Mr. More was making reference to the statute of limitations?
>
> A. As far as I knew this was a theoretical evaluation of what occurred. I wasn't aware of any actual controversy about it.
>
> Q. And when you asked Mr. More about the existence of any actual controversy what did he tell you.
>
> A. I don't believe I ever asked him about any controversy. It didn't occur to me there was one.
> [Dep. Mellion p. 19, ll. 8-20]

Mellion is clear that More answered every question asked of him by Mellion and produced any documents that were requested (Dep. Mellion p. 20). Mellion never asked More if there were any threatened or potential claims against the Property (Dep. Mellion p. 33, l.13; 34, l. 20, 24) Mellion believes that if he had asked that question More would give an honest answer. (Dep. Mellion p. 33, l. 20-21) More has testified that More informed Mellion that there were material disputes with the Condominium Association. More told Mellion that the creation of the North Development Unit was being challenged by the Condominium Associations, (Dep. More, p. 63, l.10) and that there were "serious disagreements" with the Condominium Association over this issue (Dep. More, p. 64, l.22).

Equally compelling are the internal notes of Commonwealth's own title examiner. Mellion had documents authored by his own title examiner which stated that "No MLC [Municipal Lien Certificate] is possible. The city has locus located within the common areas until development occurs, the city will not distinguish as a separate plat and lot." [Aff of Counsel, ¶, Exhibit J] The title examiner's notes went on to state that "The Newport tax assessor added Development Unit # 1 and Individual Unit parcels to the Common Elements of the Goat Island South Condo in 1995. He was told by atty. William Cochran that the development rights expired 12/31/94. My review of the Condominium Documents leads me to believe that the development rights were extended at least to 12/31/99." [Aff of Counsel, Exhibit K] Commonwealth's attempts to argue that it was without knowledge of these issues present a genuine issue of material fact which should be decided at trial.

The Plaintiff, Commonwealth, must prove that IDC engaged in intentional misconduct to permit it to rely upon the exclusionary clause which carves out defects, liens or encumbrances

created, suffered, assumed or agreed to by the insured, IDC Properties. See, American Title Insurance Company v. East West Financial, 16 F.3d 449, 455 (1st Cir. 1994). Where a policy carries an exclusion, the insurance company bears the burden of proving that the exclusion applies. Id. citing Pickering v. American Employees Ins. Co., 109 R.I. 143, 282 A.2d 584, 587 (1971) The insurer can escape liability only if it is established that the defect lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured. Id. (citations omitted). Commonwealth makes no such showing in the instant case.

Finally, the relief sought by Commonwealth is that it be held harmless from losses which arose because of the annulment of the amendments to the condominium declaration and the arguments and litigation about whether or not the amendments were effective. Since April, 2005, however, it has been evident that the loss arose because of the inherent defects in the master condominium declaration as it was established in 1988. See, *America Condominium II*.

III. There Are Genuine Issues of Material Fact Relating to the Issues of Misrepresentation raised by Commonwealth.

The crux of Commonwealth's complaint about misrepresentation is set forth on page 12 of their memorandum. Commonwealth complains that "Commonwealth reasonably relied on More, a partner at a large and reputable Providence law firm with whom Commonwealth had done business before, to make a full and fair disclosure of all material facts." Commonwealth Land Title Insurance Company's Memorandum In Support of Summary Judgment, p.12. Commonwealth did no due diligence, did not ask any questions and remained unconcerned about every single thing they heard about the "title issues," because they relied upon the fact that a lawyer at Edwards & Angell (E&A) was asking for the title insurance. They did not hire E&A as their counsel and they did not employ E&A to issue the title policy or any title opinion on

their behalf, yet they, in essence, complain that E&A did not do a sufficient job to protect their interests.

As set forth above, there are substantial issues of material fact concerning exactly what Commonwealth was told and did know. Those issues prevent the issuance of summary judgment. Commonwealth's reliance on Guardian Life Ins. Co. v. Tillinghast, 512 A.2d 855 (R.I. 1986) is misplaced. That case, in which an insured failed to disclose a prior medical condition, was decided on the basis of a Rhode Island statute which provides a statutory remedy for material misrepresentations made in connection with a written application for insurance. Id. No such application exists in this case. If Commonwealth were to argue the facts of this matter by analogy to the Tillinghast case, it would be by suggesting that if Tillinghast had seen a surgeon at Mass General, Commonwealth would have expected Tillinghast's doctor to telephone Commonwealth and let them know that the insurance was not a good risk.

A misrepresentation is not actionable unless the misrepresentations are acted upon by the plaintiff to its detriment. Guglielmi v. Rhode Island Hospital Trust Financial Corporation, 573 A.2d 687, 690 (R.I. 1990) In this case, there is no dispute that "the loss which IDC has suffered is unrelated to any alleged failure by IDC and its attorney to disclose information about the property to Commonwealth." Commonwealth Land Title Insurance Company v. IDC Properties, Inc. 2006 WL 3025985 (D. R.I. 2006)

IV. The Known Loss Doctrine is Inapposite

The loss suffered by IDC Properties was suffered as a result of the inherent defects in the master condominium declaration as established in 1988. In order to prevail on a known loss doctrine the insurer must prove that the insured knew with certainty that it would immediately suffer a loss. Insurance Company of North America v. Kayser Roth Corporation, 770 A.2d 403,

415 (R.I. 2003) IDC Properties had no such knowledge and indeed invested substantial amounts in the Property between the issuance of the policy in 1998 and the eventual loss of the Property in 1995. (Affidavit of Thomas Roos).

Conclusion

Wherefore, IDC Properties prays that the Court deny the motion of Commonwealth for summary judgment and that the Court grant such other and further relief as is just.

IDC PROPERTIES, INC., Defendant

By its attorneys,

/s/ W. Mark Russo___________
W. Mark Russo #3937
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
*Pro Hac Vice*
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: June 28, 2007

P:\Clients\Roos\Newport\Plead\Memorandum in Opposition to Summary Judgment Commonwealth.doc

## Certification

I hereby certify that on this 29th day of June, 2007, I served a true and accurate copy of the foregoing upon the following via e-mail.

**Steven E. Snow, Esq. -** ses@psh.coml; tlc@psh.com

**Deming E. Sherman, Esq.**
dsherman@eapdlaw.com

**Peter J. Haley, Esq.** haley@gordonhaley.com; Haggerty@gordonhaley.com; notices@gordonhaley.com

**Stephen F. Gordon, Esq.**
sgordon@gordonhaley.com; haggerty@gordonhaley.com; notices@gordonhaley.com

I hereby certify that on this 29th day of June, 2007, I served a true and accurate copy of the foregoing upon the following via first-class mail.

Beth E. Bookwalter, Esq.
Harold Hestnes, Esq.
**Wilmer Cutler Pickering Hale & Dorr LLP**
60 State Street
Boston, MA 02109

/s/ W. Mark Russo_________