UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br>Plaintiff,<br>v.<br>IDC PROPERTIES, INC.,<br>Defendant and Third Party Plaintiff<br>v.<br>TIMOTHY MORE, and EDWARDS ANGELL PALMER DODGE LLP<br>Third Party Defendants. | Civil Action<br>No. 01-400 T |

RESPONSE AND STATEMENT OF UNDISPUTED MATERIAL FACTS OF IDC PROPERTIES, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Defendant IDC Properties, Inc. ("IDC") in accordance with Local Rule Cv 56 responds to the numbered paragraphs of Commonwealth Land Title Insurance Company's ("Commonwealth") Local Rule 56(a) Statement of Undisputed Facts which it contests and otherwise states as follows:

Response To Commonwealth's Statement Of Material Facts

6. Timothy More requested title insurance from Commonwealth pursuant to a letter dated December 4, 1997. [Affidavit of Counsel, Exhibit I ]. The letter enclosed a memorandum dated November 17, 1997 which discussed the issues surrounding the creation of the North Development Unit and the potential challenges to the amendment creating that unit. The

memorandum states at the bottom of Page 1, "**In the absence of fraud, a court should find that the one year statute of limitations and/or laches bars any attack on the 1994 amendment**." (emphasis added) [Affidavit of Counsel, Exhibit I ] More and E&A provided a written opinion to IDC Properties in November, 1999 after the Condominium Association litigation had commenced attesting to the validity of the North Development rights and title. [Affidavit of Counsel, Exhibit E])

14. Timothy More informed Commonwealth's agent, Michael Mellion ("Mellion")- that he had also applied for title insurance with Chicago Title and that Chicago was "having concerns about issuing title insurance on the North Development Unit." [Affidavit of Counsel, Exhibit A, Deposition of Timothy More, hereinafter "Dep. More", p. 17, l. 19-20), More later told Mellion that Chicago Title had declined to provide title insurance. ( Dep. More p. 19, l. 5). More also told Mellion that there was a dispute between IDC Properties and the Condominium Association (Dep. More p. 20, l.21).

15. More informed Mellion that there were material disputes with the Condominium Association. More did not believe that the Tolling Agreement was otherwise relevant. (Dep. More, p. 28) More told Mellion that the creation of the North Development Unit was being challenged by the Condominium Associations, (Dep. More, p. 63, l.10) and that there were "serious disagreements" with the Condominium Association over this issue (Dep. More, p. 64, l.22) Mellion relied on his own independent judgment in issuing the title insurance policy. [Affidavit of Counsel, Exhibit B , Deposition of Michael Mellion, hereinafter "Dep. Mellion" p. 32, l. 21). More answered every question asked of him by Mellion and produced any documents that were requested (Dep. Mellion p. 20).

16. In addition to the documents provided by More, Mellion had documents authored by his own title examiner which stated that "No MLC [Municipal Lien Certificate] is possible. The city has locus located within the common areas until development occurs, the city will not distinguish as a separate plat and lot." [Aff. of Counsel, Exhibit J] The title examiner's notes went on to state that "The Newport tax assessor added Development Unit # 1 and Individual Unit parcels to the Common Elements of the Goat Island South Condo in 1995. He was told by atty. William Cochran that the development rights expired 12/31/94. My view of the Condominium Documents leads me to believe that the development rights were extended at least to 12/31/99." [Aff of Counsel, Exhibit K] More answered every question asked of him by Mellion and produced any documents that were requested (Dep. Mellion p. 20).

18. Mellion was provided a memorandum from More that stated, among other things, "**Even if the amendment is invalid, there is a one year statute of limitations in the Condominium Act for challenging the validity of an amendment to a Declaration adopted by an association."** (emphasis added) [Aff of Counsel, Exhibit I] Mellion was aware that the tile insurance on the property was not a simple matter, (Dep. Mellion p. 18, l. 21). After reviewing the memorandum Mellion never asked More about any controversy or challenge because "It didn't occur to me there was one." (Dep. Mellion, p. 19, l. 18)

19. Mellion relied on his own independent judgment in issuing the title insurance policy. (Dep. Mellion p. 32, l. 21). More answered every question asked of him by Mellion and produced any documents that were requested (Dep. Mellion p. 20). Mellion never asked More if there were any threatened or potential claims against the Property (Dep. Mellion p. 33, l.13; 34, l. 20, 24) Mellion believes that if he had asked that question More would give an honest answer. (Dep. Mellion p. 33, l. 20-21)

20. More informed Mellion that there were material disputes with the Condominium Association. More told Mellion that the creation of the North Development Unit was being challenged by the Condominium Associations, (Dep. More, p. 63, l.10) and that there were "serious disagreements" with the Condominium Association over this issue (Dep. More, p. 64, l.22).

<u>IDC Properties Statement Of Undisputed Materials Facts</u>

27. Commonwealth had no contact with Tom Roos or anyone from anyone IDC Properties. (Dep. Mellion, p 11 l. 16 p.12, l. 2). Tom Roos asked his counsel, Tim More, to obtain title insurance and played no other role in procuring the insurance after making that request. (Dep. More p. 57, l. 11, p. 58 l. 4)

28. More informed Mellion that there were material disputes with the Condominium Association. More told Mellion that the creation of the North Development Unit was being challenged by the Condominium Associations, (Dep. More, p. 63, l.10) and that there were "serious disagreements" with the Condominium Association over this issue (Dep. More, p. 64, l.22).

29. Mellion relied on his own independent judgment in issuing the title insurance policy. (Dep. Mellion p. 32, l. 21). More answered every question asked of him by Mellion and produced any documents that were requested (Dep. Mellion p. 20). Mellion never asked More if there were any threatened or potential claims against the Property (Dep. Mellion p. 33, l.13; p. 34, l. 20, 24) Mellion believes that if he had asked that question More would give an honest answer. (Dep. Mellion p. 33, l. 20-21).

30. In *America Condominium II,* the Rhode Island Supreme Court concluded that

> A Unit is not simply created by describing a parcel of real estate, whether or not it be airspace only, and designating it as a unit (or a master unit) in declaration of a

> condominium. There must also be compliance with the[Rhode Island Condominium] Act.

America Condominium II, 870 A.2d at 442.

31. The Supreme Court, in *America Condominium II*, determined that the original creation of the West and South Units was not in compliance with the Rhode Island Condominium Act and accordingly, "because the South and West Units were never validly created units within the meaning of the Act, they were, and remain, common elements." 870 A.2d at 440. The Supreme Court reached the same conclusion with respect to the North Unit ("Consequently, these portions of the condominium always were, and remain common elements.") 870 A.2d at 442.

IDC PROPERTIES, INC., Defendant

By its attorneys,

/s/ W. Mark Russo____________
W. Mark Russo #3937
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
*Pro Hac Vice*
Gordon Haley LLP
101 Federal Street
Boston, MA 02110
Tel: (617) 261-0100
Fax: (617) 261-0789

Dated: June 28, 2007

P:\Clients\Roos\Newport\Plead\Statement of Undisputed Facts Commonwealth with para corrected.doc

## Certification

I hereby certify that on this 29th day of June, 2007, I served a true and accurate copy of the foregoing upon the following via e-mail.

**Steven E. Snow, Esq. -** ses@psh.coml; tlc@psh.com

**Deming E. Sherman, Esq.**
dsherman@eapdlaw.com

**Peter J. Haley, Esq.** haley@gordonhaley.com; Haggerty@gordonhaley.com; notices@gordonhaley.com

**Stephen F. Gordon, Esq.**
sgordon@gordonhaley.com; haggerty@gordonhaley.com; notices@gordonhaley.com

I hereby certify that on this 29th day of June, 2007, I served a true and accurate copy of the foregoing upon the following via first-class mail.

Beth E. Bookwalter, Esq.
Harold Hestnes, Esq.
**Wilmer Cutler Pickering Hale & Dorr LLP**
60 State Street
Boston, MA 02109

/s/ W. Mark Russo_________