UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>IDC PROPERTIES, INC.,<br>Defendant and Third Party Plaintiff<br><br>v.<br><br>TIMOTHY MORE, and<br>EDWARDS ANGELL PALMER DODGE LLP<br><br>Third Party Defendants. | Civil Action No. 01-400 T |

AFFIDAVIT OF THOMAS ROOS IN OPPOSITION TO MOTIONS OF PLAINTIFF AND THIRD PARTY DEFENDANT FOR SUMMARY JUDGMENT

I, Thomas Roos, on oath, do depose and state that:

1. I am the President of IDC Properties, Inc., the Defendant and Third Party Plaintiff named in this action. I have personal knowledge of the facts stated below.

2. Members of my family were stockholders in a New England manufacturing company known as Globe Manufacturing Co.("Globe"), which held title to the property on Goat Island in Newport, Rhode Island for over 30 years (the "Property").

3. In 1994, in connection with the planned disposition of the property by Globe, I made arrangements to acquire the property through a closely held corporation IDC, Inc. At the time of my acquisition in 1994, certain real property on Goat Island had previously, in January of 1988, been made the subject of a master condominium declaration known as Goat Island South

Condominium. The condominium consisted of six units, three of which contained existing residential structures on the island. The remaining parcels were vacant land and were later identified as the West, South and North Units. The vacant land consisted of 23 acres, including most prominently the North Unit in the middle of the island, which was the most substantial area of land on the Island. At the time of my acquisition, I sold the hotel property at the east end of the Island to a third party.

4. At the time of the acquisition of the Property, I was represented by Edwards & Angell ("E&A"), a well established Rhode Island firm which was well known to me and members of my family. My principal contact at the firm was Charles "Chip" Rogers.

5. During this period I relied upon E&A for advice and direction concerning the acquisition and the subsequent development of the Property. At the same time, E&A represented me and all of the closely held entities that were created in connection with the development and business operations on the Property. E&A acted as general counsel overseeing the organization and on going legal needs of the following entities: IDC, Inc., IDC Marina, Inc., IDC Hotel, Inc., IDC Clambakes, Inc., IDC Properties, Inc., IDC Charters, Inc., IDC Rumrunner, Inc., Goat Island Grill, Inc., Historic Resorts, Inc. and Newport Times Resort, Inc. (Affidavit of Counsel, ¶ 4, Exhibit C)

6. E&A prepared annual reports, acted as agent for service of process and generally oversaw all legal matters attendant to these entities. Although from time to time, on various matters, one or more entities would use the resources of other local counsel in Newport or elsewhere. Those matters most often were referred to E&A and E&A would otherwise consult and direct me with respect to the conduct of those actions. This relationship continued through February, 2006.

7. In the instant action, the Complaint in this matter was served on Mr. Rogers of E&A as the representative of IDC, Inc. (Affidavit of Counsel, ¶ 5, Exhibit D)

8. At the time that I acquired the interests in Goat Island with plans to develop the Property, I had no particular knowledge about Rhode Island condominium law or real estate law in general. While I had access to capital and used various advisors to assist me, I did not have any particular experience or knowledge as to the legal or business issues involved in the development and relied heavily upon Mr. Rogers, Mr. More and E&A to advise and direct me in connection with those efforts.

9. Subsequent to my acquisition of the Property, IDC Properties became involved in a number of disputes with the condominium associations connected to the development, operations and oversight of the Property. The master condominium association, Goat Island South Condominium, was represented by Mr. Rogers and Mr. More as my representatives. The sub-condominiums, however, were largely controlled by the residential unit owners. My understanding of these disputes from E&A and Mr. More was that the real focus of the disputes revolved around proper assessment charges ,voting procedures and building defects. I relied upon Mr. More and E&A to advise and direct me with respect to these issues. At no time through April, 2004, did I have any understanding, belief or knowledge, that my ownership of the Property could be successfully challenged and that I would lose access to and control of the real estate.

10. In December 1997, I was in the process of preparing the North Unit for establishment of a banquet business operation, making initial plans to construct buildings on the site and undertaking exploratory excavation work in connection with the main building. Primary construction on the main building commenced in 1997 and took place through July, 1998. A

certificate of occupancy for this building was issued in October, 1998. From 1999 through July 2000, I undertook the construction of an additional building on the North Unit known as the Gazebo.

11. In 1997 and 1998, prior to embarking on the construction of the facility and the additional buildings on the North Unit, Mr. More advised me that I could obtain title insurance for the Property and that I should do so. I asked him to obtain that title insurance.

12. I never spoke or met with anyone from the Plaintiff Commonwealth Land Title or had any involvement, discussion or other concerns or knowledge about the title insurance policy procured. I understood that Mr. More had obtained title insurance and, at his direction, had the corporation pay the premium for the policy.

13. In connection with the dispute with the condominium associations, Mr. More and Mr. Rogers also represented me at the time of the negotiation of a Tolling Agreement that was part of that dispute. My understanding from them was that the real issues involved in the Tolling Agreement all revolved around proper assessment charges ,voting procedures and building defects. At no time, did I have any understanding, knowledge or belief that the condominium associations could take title to the remaining land on Goat Island. That concept never entered my mind and was, and remains, without logic, reason or justification to me. (Affidavit of Counsel, ¶ 15, Exhibit N)

14. On May 29, 1999, the condominium associations of America Condominium, Capella South Condominium and Harbor House Condominium, (collectively the "Condominium Associations") commenced an action against IDC Properties. Although Blish & Cavanaugh was designated to represent the corporation with respect to the suit, Mr. More and E&A continued to advise and direct me with respect to conduct of the real estate activities on Goat Island.

15. When the lawsuit was commenced I sought reassurance from Mr. More that the Condominium Associations would not prevail and that IDC would have the right to develop its property. Mr. More assured me that was the case and E&A issued a written opinion which they reviewed and shared with Bill Landry, counsel at Blish &Cavanaugh. (Affidavit of Counsel, ¶ 6, Exhibit E)

16. Mr. More also from time to time advised and directed me with respect to the matters attendant to the conduct of the suit by the Condominium Associations and continued to do so through February, 2006.

17. After the entry of the summary judgment decision in June, 2001, I continued to believe, based on assurances from Mr. More, that the decision would not have any impact on my ability to develop the North Unit.

18. When this action was commenced in August of 2001, I did not view it as separate and apart from the Condominium Association litigation. I continued to believe Mr. More's opinion and that of E&A would prevail and that there would not be any threat to the title to the Property. Mr. More as my counsel provided memoranda and information to Bill Landry affirming these positions. (Affidavit of Counsel, ¶ 4, Exhibit F)

19. During the conduct of this suit, I paid Mr. More legal fees for preparing for his deposition and otherwise providing direction and guidance to my counsel in connection with this matter

20. E&A likewise played an independent and important role in this matter, upon information and belief, reviewing responses to interrogatories in this matter (Affidavit of Counsel, ¶ 9, Exhibit H), discussing the matter with counsel who had been engaged, and at the time the Condominium Associations entered the Property in 2005, E&A still represented me by

putting IDC Clambake into a receivership to stop the action. (Affidavit of Counsel, ¶8, Exhibit G)

21. I have relied on Mr. More's advice and his testimony with respect to this matter.

22. By October, 2005, I engaged new counsel in this matter and filed a motion to add a third party complaint against E&A.

Signed under the penalties of perjury this 29th of June, 2007.

Thomas A. Roos

P:\Clients\Roos\Newport\Plead\Aff of Roos re sj.doc